IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| PETER A. PRIMEAU, | ) | CASE NO. 1:14CV02231 |
| | ) | |
| Petitioner, | ) | |
| | ) | JUDGE JAMES G. CARR |
| v. | ) | |
| | ) | MAGISTRATE JUDGE |
| BENNY KELLY, | ) | JONATHAN D. GREENBERG |
| Warden | ) | |
| | ) | **REPORT & RECOMMENDATION** |
| Respondent. | ) | |

This matter is before the undersigned pursuant to Local Rule 72.2.  Before the Court is

the Petition of Peter A. Primeau ("Primeau" or "Petitioner"), for a Writ of Habeas Corpus filed

pursuant to 28 U.S.C. § 2254.  Primeau is in the custody of the Ohio Department of

Rehabilitation and Correction pursuant to journal entry of sentence in the case *State v. Primeau*,

Cuyahoga County Common Pleas Court Case No. 556885-11-CR.  For the following reasons, the

undersigned recommends the Petition be DENIED.

## I.  Summary of Facts

In a habeas corpus proceeding instituted by a person in custody pursuant to the judgment

of a state court, factual determinations made by state courts are presumed correct unless rebutted

by clear and convincing evidence.  28 U.S.C. § 2254(e)(1); *see also Franklin v. Bradshaw*, 695

F.3d 439, 447 (6th Cir. 2012); *Montgomery v. Bobby*, 654 F.3d 668, 701 (6th Cir. 2011).  The

state appellate court summarized the facts underlying Primeau's conviction as follows:

{¶ 11} On March 11, 2011, Primeau arrived at the Fairview Hospital emergency room with his wife, Shinobu Higa ("Higa"), at approximately 9:30 p.m. Higa was admitted in critical condition, suffering from obvious signs of physical trauma. She was diagnosed with a perforation to her digestive tract, stomach, small intestine or colon, and was immediately intubated.

{¶ 12} Primeau told doctors that Higa, a Japanese national, had gone out the night before to see a man about her immigration status, and that she returned by bus to their apartment the following morning. Upon her return, Higa told him that she had been beaten and sexually assaulted. Primeau informed the doctors that he had been with her all day and that, although she did not want to go to hospital, he decided to bring her to the emergency room when her condition worsened.

{¶ 13} Police were called to the hospital in response to Higa's condition. Upon arrival, officers interviewed Primeau. He told them that Higa had left the night before and returned in the morning by bus, after having prostituted herself on Lorain Avenue and West 25th Street. Primeau told officers that Higa claimed to have been beaten by a black man. When Higa's condition worsened, Primeau brought her to the emergency room.

{¶ 14} Doctors performed surgery at approximately midnight on the night Higa was admitted to the hospital, in order to repair the perforation. After viewing her internal injuries, the surgeon determined that, based on the inflammation, the amount of fluid, and the color of the fluid, the perforation occurred within the last six hours.

{¶ 15} Nurse Marie Balcerski ("Balcerski") testified at trial that she had been treating Higa prior to the arrival of the police. Balcerski testified that she asked Higa, in the presence of nurse Hannah Horton ("Horton"), if she knew who had done this to her. In response, Higa nodded her head "yes." Balcerski then asked who had done this. Higa pointed to her ring-finger on her left hand, and then to the empty chair where Primeau had been sitting just moments before.

{¶ 16} Higa became agitated after indicating to Balcerski and Horton that Primeau had been her assailant. She began using her finger to spell words. Balcerski watched her spell the words "black man." When asked if that was who beat her, Higa nodded her head "yes." Higa later wrote on a piece of paper "my husband didn't do that."

2

{¶ 17} Det. Beverly Fraticelli ("Fraticelli") testified that Higa shook her head "no" when asked if her husband had done this to her. When offered pen and paper, Fraticelli testified that Higa wrote "black guy" in response to the question "who has done this to you?" When asked why she had been beaten, Higa wrote "he wanna ass sex but I say no." Due to Higa's inconsistent responses to questions regarding the identity of her assailant, Primeau was arrested.

{¶ 18} Nurse Elizabeth Pettit and nurse Alison Rerko examined Higa for sexual abuse and discovered substantial injuries. The rape kit was tested for DNA. Semen samples were taken from the anal sample and Higa's underwear. The semen and DNA samples were consistent with Higa and Primeau exclusively.

{¶ 19} On March 16, 2011, Higa died as a result of her injuries. An autopsy was performed and determined the cause of death to be homicide, due to the blunt impact to the abdomen that caused a perforation to her duodenum, part of the small intestine. The coroner's report also found that blunt trauma to her head, arms, and legs contributed to the cause of death.

{¶ 20} Detectives began investigating the conflicting accounts of Higa's assault. In the course of their investigation, they found no evidence to support Primeau's version of events. An investigation by RTA police did not reveal any evidence of Higa's presence on an RTA bus the morning of March 11 in the area of West 25th Street and Lorain, or en route to her apartment. RTA police Det. Pamela McGinty testified that there were no reports of a severely beaten woman on any bus in that vicinity. Video surveillance from a gas station near the bus stop closest to Higa's apartment did not show anyone matching her description exiting a bus on the morning of March 11.

{¶ 21} During a voluntary interview with police, Primeau stated that Higa's clothing from the night of March 10 and morning hours of March 11 was located in a blue hamper in their apartment. Police executed a search warrant for the apartment. Police discovered what they believed to be signs of a struggle. There was damage to the door and living room wall, stains on the bedspread, clumps of hair on the bedroom floor, blood on the mattress cover, a first aid kit in the kitchen, latex gloves and cotton balls in the bedroom, and blood on the bathroom floor. Police, however, did not find a blue hamper or the clothing Higa was wearing when she sustained her injuries. The clothing was later discovered in the garbage dumpster outside the apartment building.

{¶ 22} A second search warrant was executed to obtain swabs from the evidence discovered during the first search of the apartment and to measure the holes in the door and wall. During the second search, police found a food receipt on the kitchen table, time-stamped March 11, 2011, 4:57 p.m., from the Giant Eagle grocery store in Rocky River.

3

{¶ 23} A third search warrant was executed for the vehicle Primeau drove to the hospital on March 11, 2011. Inside the car, police discovered a receipt for a withdrawal made at the Charter One Bank branch located near the Giant Eagle in Rocky River. The withdrawal was time-stamped March 11, 2011, 5:02 p.m. In addition, police found the parking lot receipt from the Fairview Hospital parking garage, time-stamped March 11, 2011, 9:37 p.m.

{¶ 24} Adam Rodeghiero ("Rodeghiero"), a good friend of Primeau's, testified at trial that he and Primeau spoke on the phone on March 11, 2011, just after 6:00 p.m. The phone call lasted approximately 40 minutes, during which time Primeau told him that Higa was nauseous and acting ill. Primeau asked Rodeghiero if he thought that Higa could be "faking being sick for attention or empathy or something along those lines. Or if she was really ill." Rodeghiero suggested that Primeau take Higa to the hospital. Rodeghiero testified that had Higa been assaulted, he would expect Primeau to have told him. Primeau never mentioned the assault to Rodeghiero.

{¶ 25} In addition, several neighbors in the apartment building testified at trial that they had heard arguing, loud noises, and screaming on numerous occasions coming from the apartment Higa and Primeau shared, including the night of March 10, 2011, and the day of March 11, 2011.

{¶ 26} Teressa Fiala ("Fiala") testified that she lives directly above the apartment shared by Higa and Primeau. Fiala began hearing a loud and angry male voice in the apartment below hers in the fall of 2010. In December 2010, she heard what she believed to be the sound of someone being struck, followed by the sound of a woman crying. Fiala called management and complained. In February 2011, Fiala again heard the sound of someone being struck, followed by a woman crying. Fiala testified that on March 11, 2011, she was working at home with headphones on when she heard loud pounding noises coming from the apartment below hers. She was so afraid that she locked her own sliding glass door, fearing that someone would enter her apartment.

{¶ 27} Nicholas Lovano ("Lovano") testified at trial about his encounters with Higa and Primeau at their apartment building. In his job as a pizza delivery driver, he brought pizza to Primeau and Higa approximately three times per month. He recalled observing bruises on Higa and marks on her body and face on multiple occasions.

{¶ 28} Detectives interviewed Primeau's ex-wife, Tiffany Redding ("Redding"), who testified at trial. Redding and Primeau were married from 2003 to 2009 and lived in Japan, where Primeau was stationed while in the Air Force. Redding testified that Primeau had been physically abusive to her during their marriage. She described being beaten in the head so severely that she had scars. Redding

described being kicked in the abdomen so violently that she required medical attention. She testified that initially Primeau withheld medical treatment but eventually agreed, only after she promised to lie about how she had been injured. The trial court overruled the defense's objection to her testimony.

{¶ 29} Dr. Warner Spitz ("Spitz") testified for the defense that in his expert opinion, the first set of surgeons could not have determined when the perforation to Higa's duodenum occurred. Spitz testified that surgeons could not have determined during the first surgery that the perforation occurred within the last six hours because the trauma to the abdomen and the actual perforation could have occurred at two separate times.

*State v. Primeau*, 2012 WL 5463019, *2-5 (Ohio App. 8th Dist. Nov. 8, 2012).

## II. Procedural History

### A.      Trial Court Proceedings

In September 2011, a Cuyahoga County Grand Jury charged Primeau with one count of Murder in violation of Ohio Rev. Code §2903.02(A) (Count One); one count of Murder in violation of Ohio Rev. Code §2903.02(B) (Count Two); and one count of Felonious Assault in violation of Ohio Rev. Code §2903.11(A)(1) (Count Three). (Doc. No. 7-1, Exh. 1.)  Primeau pled not guilty to all charges.  (Doc. No. 7-1, Exh. 2.)

On September 12, 2011, Primeau, through counsel, filed a Motion to Suppress, requesting the state trial court suppress evidence obtained during the search of Primeau's apartment and car. (*Id*.)  Primeau filed a supplement to this Motion on January 3, 2012.  (Doc. No. 7-1, Exh. 3.)  The state trial court denied this Motion on January 5, 2012.  (Doc. No. 7-1, Exh. 4.)

On September 9, 2011, Primeau, through counsel, filed a Motion in Limine to exclude the testimony of Tiffany Redding, Primeau's ex-wife. (Doc. No. 7-1, Exh. 6.)  Primeau argued the evidence the State was offering was improper under Ohio Evidence Rule 404(B).  (*Id*.)  On December 22, 2011, the State filed a Motion to Admit Evidence, pursuant to Ohio Evidence Rule

5

404(B). (Doc. No. 7-1, Exh. 5.) Within the Motion, the State asserted the testimony of Tiffany Redding was admissible, as it established "the identity of the defendant through a unique *modus operandi* and common scheme or plan." (*Id*.) Primeau filed a reply in opposition. (Doc. No. 7-1, Exh. 7.)

On January 3, 2012, prior to the commencement of trial, the state trial court heard argument on these motions. (Doc. No. 8-1, Tr. 11.) The state trial court questioned the State as to why Tiffany Redding's testimony would be permissible under Ohio Evidence Rule 404(B). (*Id*. at Tr. 11-13.) After hearing arguments on the issue, the state trial court determined Tiffany Redding's testimony was "too attenuated" and ruled while it was "possible some of this evidence could come in pursuant to some testimony, but at this point I am going to exclude the testimony of the former wife." (*Id.* at Tr. 284-285.)

During trial, the State renewed their motion to admit Tiffany Redding's testimony. (Doc. No. 8-4 at Tr. 149.) After hearing argument from both sides, the state trial court determined the State could introduce Redding's testimony. (*Id*. at 152-178.)

Following the state trial court's ruling, Primeau's counsel requested time to obtain Tiffany Redding's medical records and the state trail court instructed defense counsel to "Get a subpoena out. I will sign it." (*Id*. at Tr. 181.) The state trail court also assured defense counsel there would be "an opportunity for effective cross-examination. I will give an opportunity to get the medical record." (*Id.* at Tr. 182.) The state trail court further agreed that, if the defense did not yet have the medical records when Tiffany Redding testified, the court would allow the defense to conduct a second cross examination once the medical records were obtained. (*Id*.) Primeau, through counsel, requested a mistrial at that time, which the state trail court denied. (*Id.*

6

at Tr. 183-186.)

Pursuant to Ohio Crim. R. 29, Primeau made oral motions for acquittal at the close of the

State's case and after the defense rested.  (Doc. No. 8-5 at Tr. 124; Doc. No. 8-6 at Tr. 133.)  The

trial court denied both motions.  (*Id.*)

On January 13, 2012, the jury found Primeau guilty on all charges.  (Doc. No. 7-1, Exh.

8.)  The trial court immediately proceeded to sentencing and merged all counts into Count Two.

(Doc. No. 8-6 at Tr. 248.)  The trial court sentenced Primeau to 15 years to life in prison.  (*Id.* at

Tr. 260.)

**B.**     **Direct Appeal**

On February 2, 2012, Petitioner, through counsel, filed a Notice of Appeal with the Court

of Appeals for the Eigth Appellate District ("state appellate court").  (Doc. No. 7-1, Exh. 9.)  In

his appellate brief, Primeau raised the following assignments of error:

I.     The trial court erred when it denied the Defendant's Motion to Suppress
        evidence illegally obtained through search warrants issued without the
        requisite probable cause.

II.    The trial court erred when it improperly allowed the state to present
        "other acts evidence, "namely the accusation of alleged prior domestic
        violence from Appellant's ex-wife, in violation of Evidence Rules 401,
        403, and 404(B)

III.   The trial court erred when it permitted the state of Ohio to repeatedly
        offer testimony to establish alleged prior domestic abuse involving the
        appellant and his wife in violation of Rule 404(B)

IV.    The trial court erred when it allowed Tiffany Redding to testify without
        compelling the state to produce medical records proving alleged prior
        acts of domestic violence and such a discovery violation under Rule 16
        violated the due process rights

V.     The trial court erred when it allowed a state witness to opine conclusions
        regarding the behavior patterns of victims in domestic violence cases, in

7

violation of Evidence Rules 401 and 403

VI.    The trial court erred when it permitted Officer Rutt to testify as the hearsay statements made to him in violation of Rule 801 of Ohio Rule of Evidence

VII.    The trial court erred when it permitted the Officer Rutt to render a medical opinion as to the injuries of the appellant

VIII.    The trial court erred when it allowed the police officer to render an opinion judgment that the exercising of the Defendant's Fifth Amendment right to remain silent was unusual, this creating the impression that he must be guilty

IX.    The verdict entered herein was against the manifest weight of the evidence

X.    The trial court erred when it denied Defendant's Rule 29 Motion for Judgment of Acquittal since there was legally insufficient evidence to support the charges herein

XI.    The trial court [erred] when it denied Defendant's Motion to redact portions of the videotape interview that included irrelevant and inadmissable evidence.

XII.    The trial court erred when it allowed the State to present evidence of an alleged prior domestic violence call involving the Appellant and Higa in violation of Rule 404(A) & (B)

XIII.    The trial court erred when it allowed the State to introduce photographs that were duplicative and grusome

(Doc. No. 7-1, Exh. 10.)  The State filed a brief in response, to which Primeau replied.  (Doc. No. 7-1, Exh. 11, 12.)

On November 8, 2012, the state appellate court affirmed Primeau's convictions and prison sentences.  (Doc. No. 7-1, Exh. 13.)  On November 19, 2012, Primeau, through counsel, filed an Application for Extension of Time to File Motion for Reconsideration.  (Doc. No. 7-1, Exh. 14.)  On November 30, 2012, Primeau filed a Motion for Reconsideration.  (Doc. No. 7-1,

8

Exh. 15.)  The state appellate court denied both his Application for Extension of Time and his

Motion for Reconsideration.  (Doc. No. 7-1, Exh. 16, 17.)

On December 24, 2012, Primeau, through counsel, filed a Notice of Appeal with the

Supreme Court of Ohio.  (Doc. No. 7-1, Exh. 18.)  In his Memorandum in Support of

Jurisdiction, Primeau raised the following Propositions of Law:

I.    When there is Insufficient Probable Cause Shown to Support a Search
      Warrant, a Court should Suppress the Warrant

II.   The State Should not Present Other Acts Evidence when there is no
      Showing by Substantial Proof that these Acts Occurred and it does not
      Meet any Exceptions of Rule 404(B)

III.  It is not Proper for the State to Offer Speculative Testimony of Other
      Acts Evidence to Establish Alleged Prior Domestic Abuse Involving the
      Accused and Victim in Violation of Rule 404(B)

IV.   It is a Constitutional Due Process Violation where the State willfully
      Withheld Statements of a Witness Under Rule 16, and the Court did not
      Allow the Defense to Acquire Medical Records of Alleged Victim

V.    A Witness cannot Opine Conclusions Regarding the Behavioral Pattern
      of Victims in Domestic Violence Cases, Without the Requisite
      Qualifications under Rule 702 and in Violation of Rules 401 And 403

VI.   A Witness should not be allowed to Testify as to the Hearsay Statements
      made to Him by Others in Violation of Rule 801

VII.  A Police Officer cannot Render a Medical Opinion Characterizing
      Different Types of Injuries

VIII. A Police Officer cannot Render an Opinion that the Exercising of the
      Accused's Fifth Amendment Right to Remain Silent was Unusual, thus
      Creating the False Impression that he must be Guilty

IX.   A Verdict of Guilty Cannot Legally Stand if it is Against the Manifest
      Weight of the Evidence

X.    Where there was Legally Insufficient Evidence to Prove the Charges, an
      Accused is Entitled to a Judgment of Acquittal

9

XI.　　It is Error not to Redact or Exclude Irrelevant and Inadmissible Evidence from a Videotape

XII.　　It is Impermissable to Allow the State to Present Evidence of an Alleged Prior Domestic Violence Call Involving the Accused and Victim in Violation of Rule 404(A) & (B)

XIII.　　The State cannot Introduce Photographs that were Duplicative and Gruesome

(Doc. No. 7-1, Exh. 19.)  The State filed a response.  (Doc. No. 7-1, Exh. 20.)

On March 13, 2013, the Supreme Court of Ohio declined to accept jurisdiction of the appeal pursuant to S.Ct. Prac. R. 7.08(B)(4).  (Doc. No. 7-1, Exh. 21.)

On August 10, 2013, Primeau filed a petition for a writ of *certiorari* with the Supreme Court of the United States.  (Doc. No. 7-1, Exh. 22.)  The State did not file a response.  (Doc. No. 7-1, Exh. 23.)  The Supreme Court of the United States denied the petition for a writ of *certiorari* on October 7, 2013.  (Doc. No. 7-1, Exh. 24.)

## C.　　Federal Habeas Petition

On October 7, 2014, Primeau, through counsel, filed a Petition for Writ of Habeas Corpus in this Court and asserted the following grounds for relief:

**ASSIGNMENT OF ERROR 1**: Petitioner Primeau's convictions were not supported by sufficient evidence in violation of the Fifth and Fourteenth Amendments to the United States Constitution when the court affirmed the jury's verdict based on non-verbal communications made by Mr. Primeau's wife, interpreted to accuse him of assaulting her, while her written communications, made at the same time, clearly exonerated Mr. Primeau

**ASSIGNMENT OF ERROR 2:** The trial court erred and violated Mr. Primeau's right to due process under the Fourteenth Amendment when it allowed prior act, propensity, and character evidence to be presented in violation of Evidence Rule 404(B), thereby prejudicing the jury against him.

**ASSIGNMENT OF ERROR 3**: The trial court erred and violated Mr. Primeau's rights to a fair trial and due process under the Fifth and Fourteenth Amendment

10

when it reversed a prior ruling, upon which the defense had relied, relating to the inadmissibility of prior act and character evidence mid-trial in violation of Evidence Rules 401, 403, and 404(B), leaving no time for Mr. Primeau to prepare an adequate defense.

**ASSIGNMENT OF ERROR 4:** The prosecuting attorney violated Mr. Primeau's right to due process under the Fourteenth Amendment when he failed to notify the defense and held back a material witness' statement until mere days before trial though they had known about the witness for months.

**ASSIGNMENT OF ERROR 5**: The trial court erred and violated Mr. Primeau's right to due process under the Fourteenth Amendment when it failed to sanction the prosecution by excluding a witness' testimony when the prosecution held back a material witness' statement until mere days before trial though they had known about the witness for months.

**ASSIGNMENT OF ERROR 6:** Petitioner Primeau was denied his Sixth Amendment right to effective assistance of counsel when his attorneys failed to secure copes of medical records to refute the testimony of his ex-wife who alleged abuse.

**ASSIGNMENT OF ERROR 7**: Petitioner Primeau's Fifth Amendment right against self-incrimination was violated when the prosecutor elicited, repeated, and highlighted testimony relating to Mr. Primeau's "overly calm" post-arrest demeanor.

**ASSIGNMENT OF ERROR 8:** The trial court erred and violated Mr. Primeau's rights to a fair trial and due process under the Fourteenth Amendment when it allowed lay witnesses to provide expert opinion testimony in violation of Evidence Rule 702.

(Doc. No.1.)

On December 12, 2104, Warden Bennie Kelly[1] ("Respondent") filed his Return of Writ.

(Doc. No. 7.)  Within this Return, Respondent argued the Petition was mixed – i.e., it contained

both unexhausted and exhausted claims.  (*Id*.)  On January 12 20155, Primeau filed his Traverse

and a Motion to Stay and Hold in Abeyance.  (Doc. Nos. 9, 10.)  Within this Motion, Primeau

---

[1]     The Court notes Bennie Kelly has since been replaced by LaShann Eppinger as the warden of Grafton Correctional Institution. (Doc. No. 27 at 1.)

11

requested the Court stay the proceedings in order to allow him to return to state court to exhaust all of his claims.  (Doc. No. 10.)  Respondent filed a response in opposition.  (Doc. No. 12.)

On May 22, 2015, Magistrate Judge Nancy A. Vecchiarelli[2] issued a Report and Recommendation, recommending Primeau's Petition be dismissed and his Motion to Stay be denied as moot.  (Doc. No. 14.)  Primeau filed an objection to this Report and Recommendation on June 5, 2015.  (Doc. No. 15.)

On September 8, 2015, District Judge David A. Katz[3] declined to adopt the Report and Recommendation and granted Primeau's Motion to Stay.  (Doc. No. 16.)  Judge Katz ordered Primeau to file an amended Petition within 60 days of exhausting his available state court remedies.  (*Id*.)

**D.      Post-Conviction Filings**

Thereafter, on November 9, 2015, Primeau, through counsel, filed a "Petition for Post-Conviction Relief Under R.C. 2953.21" with the state trial court.  (Doc. No. 27-1, Exh. 25.)  This filing raised the following claim:

> I.      Petitioner Primeau was denied his Sixth Amendment right to effective assistance of counsel when his attorneys failed to secure copies of medical records to refute the testimony of his ex-wife who alleged abuse and the Trial Court refused to stay the proceedings in order to allow Mr. Primeau's attorneys the opportunity to effectively cross-examine Mr. Prmeau's[sic] ex-wife.

(*Id*.)  The State filed a response in opposition.  (Doc. No. 27-1, Exh. 26.)

---

[2]      This case was reassigned to the undersigned on August 22, 2016.

[3]      This case was initially assigned to District Judge Jeffrey J. Helmick, but was reassigned to District Judge David A. Katz on August 31, 2015.  It was thereafter reassigned to District Judge James G. Carr on August 12, 2016.

On May 25, 2016, the state trial court summarily denied this Petition.  (Doc. No. 27-1, Exh. 27.)  On June 8, 2016, Primeau, through counsel, filed a "Motion for Findings of Fact and Conclusions of Law Under R.C. 2953.21."  (Doc. No. 27-1, Exh. 28.)

Meanwhile, on June 24, 2016, Primeau, through counsel, filed a "Notice of Appeal and Motion to Stay the Appeal and Suggestion for Remand" with the state appellate court.  (Doc. No. 27-1, Exh. 29.)  Within this Motion, Primeau noted the state trial court had not yet issued the required Findings of Fact and conclusions of law and requested the state appellate court stay the proceedings until the state trial court had done so.  (*Id.*)  On July 7, 2016, the state appellate court granted the stay and subsequently remanded the matter to the state trial court.  (Doc. No. 27-1, Exh. 30, 31.)  .

On August 16, 2016, the state trial court issued its Findings of Fact and Conclusions of Law with respect to Primeau's Petition for Postconviction Relief.  (Doc. No. 27-1, Exh. 32.) Primeau proceeded to file his Brief with the state appellate court on September 23, 2016.  (Doc. No. 27-1, Exh. 33.)  Within this Brief, Primeau raised the following argument:

> I.    The trial court erred when it denied Mr. Primeau's Petition for Post-Conviction Relief, finding that Mr. Primeau's trial counsel representation did not reach the level of ineffective assistance of counsel, and that Mr. Primeau was not prejudiced or denied effective assistance of counsel to an extent that would have altered the outcome of the case.

(Doc. No. 27-1, Exh. 33.)  The State filed a Brief in opposition.  (Doc. No. 27-1, Exh. 34.)

On March 30, 2017, the state appellate court affirmed the decision of the trial court. (Doc. No. 27-1, Exh. 35.)  However, rather than review the merits of Primeau's claim, the state appellate court found his Petition for Post-Conviction Relief was untimely.  (*Id.*)

On April 28, 2017, Primeau, proceeding *pro se*, filed a Notice of Appeal with the

13

Supreme Court of Ohio.  (Doc. No. 27-1, Exh. 36.)  In his Memorandum in Support of

Jurisdiction, Primeau raised the following Propositions of Law:

> I.      A post-conviction petitioner in a criminal case who has the same
>         lawyer on direct appeal as at trial is unavoidably prevented from
>         raising ineffective assistance of trial counsel in a post-conviction
>         petition within the limitations period.
>
> II.     Trial counsel who fails to obtain medical records to refute the sole
>         inculpatory testimony against the defendant in a criminal case is
>         constitutionally ineffective within the meaning of the Sixth and
>         Fourteenth Amendments.

(Doc. No. 27-1, Exh. 37.)  On July 26, 2017, the Supreme Court of Ohio declined to accept

jurisdiction of the appeal pursuant to S.Ct. Prac. R. 7.08(B)(4).  (Doc. No. 27-1, Exh. 38.)

Thereafter, Primeau filed a petition for a writ of *certiorari* with the Supreme Court of the United

States, which was denied on November 13, 2017.  (Doc. No. 27-1, Exh. 39.)

**E.      Amended Federal Habeas Petition**

On January 11, 2018, Primeau, through counsel, filed an Amended Petition, pursuant to

Judge Katz's September 8, 2015 Order.  (Doc. No. 24.)  Within this Petition, Primeau asserted

the same grounds for relief as his initial Petition, except for the following changes to Ground Six:

> **ASSIGNMENT OF ERROR 6:** Petitioner Primeau was denied his Sixth
> Amendment right to effective assistance of counsel when his attorneys failed
> to secure copies of medical records to refute the testimony of his ex-wife
> who alleged abuse and the Trial Court refused to stay the proceedings in
> order to allow Mr. Primeau's attorneys the opportunity to effectually cross-
> examine Mr. Primuea's[sic] ex-wife.

(Doc. No. 24 at 8.)  On June 11, 2018, Respondent filed a Supplemental Return of Writ.  (Doc.

No. 27.)

14

### III.  Exhaustion and Procedural Default – Grounds Six and Eight

**A.      Ground Six – Ineffective Assistance of Counsel**

Respondent argues Ground Six of the Petition is procedurally defaulted.  (Doc. No. 27 at 33.)  Respondent asserts the state appellate court determined Primeau's post conviction filing, in which Primeau raised his ineffective assistance of counsel claims, was filed untimely and "failed to meet any of the exceptions for an untimely filing."  (*Id*.)  Respondent maintains Primeau is unable to establish cause, prejudice, or miscarriage of justice in order to avoid procedural default.  (*Id*. at 34-35.)

Primeau argues since he was represented by the same counsel at trial and direct appeal, "his first opportunity to consider and file an ineffective assistance claim occurred well after" the deadline to file a petition for post-conviction relief in the state courts.  (Doc. No. 10 at 5.)  Primeau asserts he was "prejudiced by the lack of evidence to refute testimony presented by Redding . . . .[which] would have allowed [him] to present a colorable claim of actual innocence."  (Doc. No. 9 at 12.)

Petitioners must exhaust their state remedies prior to raising claims in federal habeas corpus proceedings.  *See* 28 U.S.C. § 2254(b),( c).  This requirement is satisfied "when the highest court in the state in which the petitioner was convicted has been given a full and fair opportunity to rule on the petitioner's claims."  *Manning v. Alexander*, 912 F.2d 878, 881 (6th Cir.1990).

Federal courts will not consider the merits of procedurally defaulted claims, unless the petitioner demonstrates cause for the default and prejudice resulting therefrom, or where failure to review the claim would result in a fundamental miscarriage of justice.  *See Lundgren v.*

*Mitchell*, 440 F.3d 754, 763 (6th Cir. 2006) (citing *Wainwright v. Sykes*, 433 U.S. 72, 87, 97

S.Ct. 2497, 53 L.Ed.2d 594 (1977)).  A claim may become procedurally defaulted in two ways.

*Id.*  First, a petitioner may procedurally default a claim by failing to comply with state procedural

rules in presenting his claim to the appropriate state court.  *Id.; see also Maupin v. Smith*, 785

F.2d 135, 138 (6th Cir. 1986).  If, due to petitioner's failure to comply with the procedural rule,

the state court declines to reach the merits of the issue, and the state procedural rule is an

independent and adequate grounds for precluding relief, the claim is procedurally defaulted.[4]  *Id.*

Second, a petitioner may also procedurally default a claim by failing to raise and pursue

that claim through the state's "ordinary appellate review procedures."  *O'Sullivan v. Boerckel*,

526 U.S. 838, 848, 119 S.Ct. 1728, 144 L.Ed.2d 1 (1999).  If, at the time of the federal habeas

petition, state law no longer allows the petitioner to raise the claim, it is procedurally defaulted.

*Engle v. Isaac,* 456 U.S. 107, 125 n. 28, 102 S.Ct. 1558, 71 L.Ed.2d 783 (1982); *see also*

*Coleman v. Thompson*, 501 U.S. 722, 731–32, 111 S.Ct. 2546, 115 L.Ed.2d 640 (1991); *Lovins*,

712 F.3d 283, 295 (6th Cir. 2013) ("a claim is procedurally defaulted where the petitioner failed

to exhaust state court remedies, and the remedies are no longer available at the time the federal

---

[4] In *Maupin*, the Sixth Circuit established a four-step analysis to determine whether a claim
is procedurally defaulted. 785 F.2d at 135. Under this test, the Court decides (1) whether the
petitioner failed to comply with an applicable state procedural rule, (2) whether the state
courts actually enforced the state procedural sanction, (3) whether the state procedural bar
is an "independent and adequate" state ground on which the state can foreclose federal
review, and (4) whether the petitioner has demonstrated "cause" and "prejudice." *Id.* at
138–39; *Barkley v. Konteh*, 240 F. Supp.2d 708 (N.D. Ohio 2002). "In determining whether
a state court actually enforced a procedural rule, we apply the 'plain statement' rule of
*Michigan v. Long*, 463 U.S. 1032, 103 S.Ct. 3469, 77 L.Ed.2d 1201 (1983)." *Lovins v.
Parker*, 712 F.3d 283, 296 (6th Cir. 2013) ("a procedural default does not bar consideration
of a federal claim on either direct or habeas review unless the last state court rendering a
judgment in the case 'clearly and expressly' states that its judgment rests on the procedural
bar.") (citations omitted).

16

petition is filed because of a state procedural rule.")  This second type of procedural default is often confused with exhaustion.  Exhaustion and procedural default, however, are distinct concepts.  AEDPA's exhaustion requirement only "refers to remedies still available at the time of the federal petition."  *Engle*, 456 U.S. at 125 n. 28.  Where state court remedies are no longer available to a petitioner because he failed to use them within the required time period, procedural default and not exhaustion bars federal court review.  *Id*.  In Ohio, a petitioner is not entitled to raise claims in post-conviction proceedings where those claims could have been raised on direct appeal.  *Id*.  Thus, if an Ohio petitioner failed to raise a claim on direct appeal, which could have been raised, the claim is procedurally defaulted.  *Id*.

A claim is adequately raised on direct appeal if it was "fairly presented" to the state court. To fairly present a claim to a state court a petitioner must assert both the legal and factual basis for his claim.  *See McMeans v. Brigano*, 228 F.3d 674, 681 (6th Cir. 2000).  Accordingly, a "petitioner must present his claim to the state courts as a federal constitutional issue-not merely as an issue arising under state law."  *Koontz v. Glossa*, 731 F.2d 365, 368 (6th Cir. 1984).  A petitioner can take four actions in his brief which are significant to the determination as to whether a claim has been fairly presented as a federal constitutional claim: (1) reliance upon federal cases employing constitutional analysis; (2) reliance upon state cases employing federal constitutional analysis; (3) phrasing the claim in terms of constitutional law or in terms sufficiently particular to allege a denial of a specific constitutional right; or (4) alleging facts well within the mainstream of constitutional law.  *Williams v. Anderson*, 460 F.3d 789, 806 (6th Cir. 2006).

A petitioner's procedural default, however, may be excused upon a showing of "cause"

for the procedural default and "actual prejudice" from the alleged error.  *See Maupin*, 785 F.2d at 138–39. "Demonstrating cause requires showing that an 'objective factor external to the defense impeded counsel's efforts to comply' with the state procedural rule." *Franklin v. Anderson*, 434 F.3d 412, 417 (6th Cir. 2006) (quoting *Murray v. Carrier*, 477 U.S. 478, 488 (1986)). Meanwhile, "[d]emonstrating prejudice requires showing that the trial was infected with constitutional error." *Id.*  Where there is strong evidence of a petitioner's guilt and the evidence supporting petitioner's claim is weak, the actual prejudice requirement is not satisfied.  *See United States v. Frady*, 456 U.S. 152, 172, 102 S.Ct. 1584, 71 L.Ed.2d 816 (1982); *Perkins v. LeCureux*, 58 F.3d 214, 219–20 (6th Cir. 1995); *Rust v. Zent*, 17 F.3d 155, 161-62 (6th Cir. 1994).  Prejudice does not occur unless petitioner demonstrates "a reasonable probability" that the outcome of the trial would have been different.  *See Mason v. Mitchell*, 320 F.3d 604, 629 (6th Cir. 2003) (citing *Strickler v. Greene*, 527 U.S. 263, 289, 119 S.Ct. 1936, 144 L.Ed.2d 286 (1999)).

Finally, a petitioner's procedural default may also be excused where a petitioner is actually innocent in order to prevent a "manifest injustice."  *See Coleman v. Thompson*, 501 U.S. 722, 749–50, 111 S.Ct. 2546, 115 L.Ed.2d 640 (1991).  Conclusory statements are not enough—a petitioner must "support his allegations of constitutional error with new reliable evidence-whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence-that was not presented at trial." *Schlup v. Delo*, 513 U.S. 298, 324, 115 S.Ct. 851, 130 L.Ed.2d 808 (1995).  *See also Jones v. Bradshaw*, 489 F. Supp.2d 786, 807 (N.D. Ohio 2007); *Allen v. Harry*, 2012 WL 3711552 at * 7 (6th Cir. Aug. 29, 2012).

With these principles in mind, the Court finds Ground Six[5] of Primeau's federal habeas petition to be procedurally defaulted.  It is undisputed Primeau did not raise this claim on direct appeal.  (*See* Doc. No. 14 at 21.)  Indeed, this matter was stayed on September 8, 2015, in order to allow Primeau to fully exhaust[6] this ground for relief.  (Doc. No. 16.)  Primeau proceeded to file a petition for post-conviction relief with the state trial court, in which he initially presented his ineffective assistance of counsel claims to the state courts.  (Doc. No. 27-1, Exh. 25.)  The state trial court denied this petition, finding the claim to be without merit.  (Doc. No. 27-1, Exh. 27, 32.)

Thereafter, Primeau filed an appeal with the state appellate court, again raising his ineffective assistance of counsel claim.  (Doc. No. 27-1, Exh. 29, 33.)  The state appellate court affirmed the judgment of the state trial court and found Primeau's post-conviction filing to be untimely.  (Doc. No. 27-1, Exh. 35.)  Within its decision, the state appellate court noted Primeau had, under O.R.C. § 2953.21(A)(2), 365[7] days after the trial transcript was filed to file a petition

---

[5]    Ground Six in the Amended Petition reads as follows:  Petitioner Primeau was denied his Sixth Amendment right to effective assistance of counsel when his attorneys failed to secure copies of medical records to refute the testimony of his ex-wife who alleged abuse and the Trial Court refused to stay the proceedings in order to allow Mr. Primeau's attorneys the opportunity to effectually cross-examine Mr. Primuea's[sic] ex-wife. (Doc. No. 24 at 8.)

[6]    The Court is satisfied Ground Six is now fully exhausted, as Primeau filed a petition for post-conviction relief asserting this claim to the state courts, and was denied a writ of *certiorari* with the Supreme Court of the United States on November 13, 2017.  (*See* Doc. No. 27-1, Exh. 25, 33, 36, 39.)

[7]    Primeau asserts the deadline was 180 days after the filing of the trial transcript. (Doc. No. 9 at 7.)  However, effective March 23, 2015, the Ohio legislature changed the number of days from 180 to 365.  *State v. Paige*, 2018 WL 3414256, at *3 (Ohio App. 7th Dist. June 29, 2018).  Regardless, Primeau's petition for post-conviction relief was filed beyond the deadline contained in both versions of the statute.

for post conviction relief.  (*Id.*)  The state appellate court concluded "Primeau did not file his petition until well beyond the 365 days.  Thus, his petition is untimely." (*Id*.)  The state appellate court discussed several exceptions to this deadline, in which a trial court would be permitted to entertain an untimely petition.  (*Id.*)  However, the state appellate court determined "Primeau does not even allege, let alone establish, any of the requirements necessary to bring an untimely petition for postconviction relief."  (*Id*.)  Primeau filed an appeal with the Supreme Court of Ohio, which declined to accept jurisdiction of the appeal.  (Doc. No. 27-1, Exh. 36, 38.)  Primeau then filed a petition for a writ of *certiorari* with the Supreme Court of the United States, which was denied.  (Doc. No. 27-1, Exh. 39.)

The Court finds Primeau's failure to timely file his post-conviction petition resulted in procedural default.  As noted by the state appellate court, the time for Primeau to timely seek relief in a post-conviction filing had long passed when he initially raised his ineffective assistance of counsel claims.[8]  Ohio's timeliness requirements in post-conviction proceedings constitute an independent and adequate state ground for declining to review the merits of a petitioner's claims and finding procedural default.  *Townsend v. Gansheimer*, 2009 WL 589332, * 7 (N.D.Ohio March 9, 2009) (adopting the report and recommendation of Perelman, M.J.); *Wolff v. Tibbles*, 2014 WL 2694227 at * 14 (N.D. Ohio June 13, 2014) (adopting the report and recommendation of Vecchiarelli, M.J.); *Brown v. Clipper*, 2016 WL 5173331, *23 (N.D. Ohio Sept. 21, 2016)(adopting the report and recommendation of Vecchiarelli, M.J.).  Further, Primeau

---

[8]     A review of the record indicates the trial transcript was filed in the state appellate court on March 13, 2012.  (Doc. No. 27-1, Exh. 42.)  Thus, under the current version of O.R.C. § 2953.21(A)(2), Primeau's deadline to file a petition for post-conviction relief was March 13, 2013.  Primeau's post-conviction filing was therefore over two years late.

20

does not argue, nor is the Court aware of, any other state court remedy which continues to be available to Primeau to raise Ground Six of his federal habeas petition.  Thus, the Court finds Ground Six to be procedurally defaulted.

> **a.** **Cause and Prejudice**

Primeau may nevertheless obtain a merits review of this claim if he can demonstrate cause for the default and prejudice resulting therefrom, or that failure to review the claim would result in a fundamental miscarriage of justice.  *See Lundgren,* 440 F.3d at 763.  Primeau argues because he had the same counsel at trial and throughout his direct appeal, "his first opportunity to consider and file an ineffective assistance of counsel claim occurred well after" the deadlines imposed by O.R.C. § 2953.21(A)(2).  (Doc. No. 10 at 5.)

This argument is not well-taken.  While it is true Primeau was represented by the same counsel at trial and on direct appeal, this did not prevent him from filing, either *pro se* or with the assistance of different counsel, a timely petition for post-conviction relief.  Primeau provides no authority for his argument he was prevented from asserting his Ground Six claims while his direct appeal was pending or while he was seeking review by the Supreme Court of the United States.  Indeed, state trial courts in Ohio have jurisdiction to hear timely filed petitions for post-conviction relief while direct appeals are pending.  *See* O.R.C. § 2953.21(D) ("The court shall consider a petition that is timely filed under division (A)(2) of this section even if a direct appeal of the judgment is pending.) *See also Morgan v. Eads*, 104 Ohio St.3d 142, 145, 818 N.E.2d 1157, 1160 (Ohio 2004) ("Trial courts routinely consider petitions for postconviction relief even while an appeal from the conviction is pending either in the court of appeals or in this court.").  Primeau's ignorance of the law is insufficient to establish cause.  *Bonilla v. Hurley,* 370 F.3d

21

494, 498 (6th Cir. 2004).  *See also Tolliver v. Sheets*, 530 F.Supp.2d 957, 981 (S.D. Ohio 2009);

*Terry v. Warden,* 2016 WL 5477552 at *12 (Mar. 3, 2016.)  Thus, Primeau's unawareness of his

ability to raise an ineffective assistance of counsel claim while his direct appeal was pending[9]

cannot serve as cause to excuse the default of this particular habeas claim.

As Primeau is unable to establish cause to excuse his procedural default, the Court

declines to address the issue of prejudice.  *See Simpson v. Jones*, 238 F.3d 399, 409 (6th

Cir.2000) ("When a petitioner fails to establish cause to excuse a procedural default, a court does

not need to address the issue of prejudice."); *Group v. Robinson*, 158 F.Supp.3d 632, 651 (N.D.

Ohio Jan. 20, 2016).

Accordingly, and for all the reasons set forth above, the Court finds Primeau has failed to

establish cause and prejudice to excuse the procedural default of Ground Six.

**b.      Actual Innocence**

Primeau also argues the procedural default of Ground Six should be excused on the basis

of "a colorable claim of actual innocence."  (Doc. No. 9 at 12.)

Because the cause and prejudice standard is not a perfect safeguard against fundamental

miscarriages of justice, the United States Supreme Court has recognized a narrow exception to

the cause requirement where a constitutional violation has "probably resulted" in the conviction

of one who is "actually innocent" of the substantive offense.  *Dretke v. Haley*, 541 U.S. 386, 124

S.Ct. 1847, 158 L.Ed.2d 659 (2004) (citing *Carrier*, 477 U.S. at 495–96); *see also Schlup*, 513

---

[9]      The Court notes the state appellate court rejected this same argument, noting when
a defendant "is represented by the same counsel at trial and throughout his appeals,"
it does not excuse the filing of an untimely post-conviction petition.  (Doc. No. 27-1,
Exh. 35.)

U.S. at 327 (1995).  Actual innocence means "factual innocence, not mere legal insufficiency."
*Bousley v. United States*, 523 U.S. 614, 623–24, 118 S.Ct. 1604, 140 L.Ed.2d 828 (1998).  To be
credible, such a claim requires the petitioner to support his allegations of constitutional error with
new and reliable evidence that was not presented at trial.  *Schlup*, 513 U.S. at 324; *see also*
*Gulertekin v. Tinnelman–Cooper*, 340 F.3d 415, 427 (6th Cir. 2003).

Primeau argues he would have been able to "refute Redding's testimony alleging abuse
by Mr. Primeau" had his trial counsel obtained copies of his Tiffany Redding's medical records.
(Doc. No. 9 at 12.)  However, this argument does not establish "actual innocence."  Primeau
provides no new, reliable evidence of his innocence which was not presented at trial.  Rather, he
asserts Ms. Redding's medical records could have been used to attack the credibility[10] of her
testimony.  Absent new evidence of innocence, "even the existence of a concededly meritorious
constitutional violation is not in itself sufficient to establish a miscarriage of justice that would
allow a habeas court to reach the merits of a barred claim."  *Schlup*, 513 U.S. at 316.

Accordingly, and in light of the above, it is recommended Ground Six of Primeau's
habeas petition be DISMISSED as procedurally defaulted.

**B.      Ground Eight – Expert Testimony**

In his eighth ground for relief, Primeau argues the trial court erred in allowing Allison
Rerko, RN, testify "in general about patients' psychological and behavioral patterns who are
victims of domestic violence."  (Doc. No. 24 at 25.)  He asserts Nurse Rerko was unqualified to

---

[10]     The Court notes Primeau assumes Ms. Redding's medical records would have been
helpful to his defense.  However, as the exact contents of these medical records are
unknown, it is also possible they would have been harmful to his defense and
supported her testimony.  This further undercuts Primeau's argument that access to
these records would have changed the outcome of his case.

23

give an expert opinion, and such an admission violated his rights to fair trial and due process.

(*Id.*)  Primeau contends the "trial court's allowance of such testimony runs contrary to clearly

established federal law under *Daubert.*"  (Doc. No. 9 at 17.)  Respondent maintains this ground

for relief is not cognizable and without merit.  (Doc. No. 27 at 32.)

The Court finds Ground Eight to be procedurally defaulted.  On direct appeal to the state

appellate court, Primeau argued Nurse Rerko's testimony was admitted in violation of Ohio

Rules of Evidence 401 and 403.  (Doc. No. 7-1, Exh. 10.)  This claim did not include any

references to constitutional violations or federal law.  Primeau's arguments regarding Ms.

Rerko's testimony were based entirely on state law, with no mention of due process or his right

to a fair trail.  (*Id.*)  The state appellate court found no error under state law and affirmed

Primeau's conviction and sentence.  (Doc. No. 7-1, Exh. 13.).

Primeau appealed to the Supreme Court of Ohio, again raising the argument Nurse

Rerko's testimony was admitted in violation of the Ohio Rules of Evidence.  (Doc. No. 7-1, Exh.

19.)  Primeau again did not raise any arguments of an alleged constitutional violation and based

his entire argument on violations of state law.  (*Id.*)  The Supreme Court of Ohio declined

jurisdiction of his appeal.  (Doc. No. 7-1, Exh. 21.)

In light of the above, the Court finds Primeau has not fairly presented his claim to the

state courts.  Indeed, in order to fairly present a ground for relief, a  "petitioner must present his

claim to the state courts as a federal constitutional issue-not merely as an issue arising under state

law." *Koontz*, 731 F.2d at 368 (6th Cir. 1984).  Here, Primeau did not assert any federal

constitutional claims arising out of the admission of Nurse Rerko's testimony.  The first time this

argument was framed as a federal constitutional violation was in Primeau's federal habeas

24

petition.  Moreover, there is no mechanism by which Primeau could now return to state court and assert these claims in the context of federal constitutional violations.

Primeau does not offer any specific arguments regarding the cause for his procedural default of Ground Eight.  Moreover, he has not provided any new and reliable evidence to establish actual innocence.  Accordingly, the Court finds Ground Eight to be procedurally defaulted.

In addition to being procedurally defaulted, the Court agrees with Respondent this claim is not cognizable on federal habeas review.  It is well-established that, in conducting habeas review, "a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States."  *Estelle v. McGuire*, 502 U.S. 62, 68 (1991).  As such, the Supreme Court has explained "it is not the province of a federal habeas court to reexamine state-court decisions on state-law questions."  *Id*. at 67-68.  *See also Bey v. Bagley*, 500 F.3d 514, 519 (6th Cir. 2007); *Coleman v. Mitchell*, 244 F.3d 533, 542 (6th Cir. 2001).  Because habeas review is limited to claims implicating federal concerns, this Court lacks jurisdiction to consider a claim the state trial court violated Ohio Rules of Evidence 403 and 702.

To the extent Primeau asserts a federal due process violation based on the trial court's admission of Ms. Rerko's testimony, the Court finds this argument likewise to be without merit. Under AEDPA, a state trial court has wide latitude in ruling on evidentiary matters.  *Seymour v. Walker*, 224 F.3d 542, 552 (6th Cir. 2000).  A state court evidentiary ruling will not rise to the level of a due process violation unless it "offend[s] some principle of justice so rooted in the traditions and conscience of our people as to be ranked as fundamental."  *Id.*

Primeau argues the admission of Ms. Rerko's testimony did not satisfy the standard set

forth in *Daubert v. Merrell Dow Pharmaceuticals, Inc*., 509 U.S. 579, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993).  (Doc. No. 9 at 16-17.)  However, the Sixth Circuit has held *Daubert* cannot provide a basis for habeas relief because *Daubert* concerns the Federal Rules of Evidence which are irrelevant to a state criminal conviction.  *Norris v. Schotten*, 146 F.3d 314, 335 (6th Cir.), *cert. denied*, 525 U.S. 935 (1998).  *See also Smith v. Warden, Ross Corr. Inst.*, 2017 WL 3623939 at *1 (6th Cir. July 3, 2017).  Moreover, *Daubert* "is not a decision of federal constitutional law, so that a failure to meet the *Daubert* standard does not qualify as a violation of the federal constitution."  *White v. Hooks*, 2017 WL 5257137, at *2 (S.D. Ohio Nov. 13, 2017), *report and recommendation adopted* 2018 WL 389098 (S.D. Ohio Jan. 11, 2018).  *See also Jackson v. Warden, Lebanon Corr. Inst*., 2014 WL 3899292 at *25 (S.D. Ohio Aug. 11, 2014), *report and recommendation adopted* 2014 WL 4704071 (S.D. Ohio Sept. 22, 2014).  As there is no Supreme Court precedent which holds the failure to meet the *Daubert* standard is a violation of due process, this Court concludes the state appellate court's decision is not contrary to, or an unreasonable application of, clearly established federal law.

Accordingly, and in light of the above, it is recommended Ground Eight of Primeau's habeas petition be DISMISSED as procedurally defaulted and/or not cognizable on federal habeas review.

## IV.  Review on the Merits

### A.      Legal Standard

This case is governed by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), 28 U.S.C. § 2254.  *See Lindh v. Murphy*, 521 U.S. 320, 326-27, 337 (1997).  The

relevant provisions of AEDPA state:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim–
>
> > (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> >
> > (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d) (1996).

Clearly established federal law is to be determined by the holdings (as opposed to the dicta) of the United States Supreme Court.  *See Parker v. Matthews*, 567 U.S. 37, 132 S.Ct. 2148, 183 L.Ed.2d 32 (2012); *Renico v Lett*, 559 U.S. 766, 130 S.Ct. 1855, 1865-1866 (2010); *Williams v. Taylor*, 529 U.S. 362, 412, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000); *Shimel v. Warren,* 838 F.3d 685, 695 (6th Cir. 2016); *Ruimveld v. Birkett*, 404 F.3d 1006, 1010 (6th Cir. 2005).  Indeed, the Supreme Court has indicated that circuit precedent does not constitute "clearly established Federal law, as determined by the Supreme Court."  *Parker*, 567 U.S. at 48-49; *Howes v. Walker*, 567 U.S. 901, 132 S.Ct. 2741, 183 L.Ed.2d 612 (2012).  *See also Lopez v. Smith*, –– U.S. ––, 135 S.Ct. 1, 4, 190 L.Ed.2d 1 (2014) (per curiam) ("Circuit precedent cannot 'refine or sharpen a general principle of Supreme Court jurisprudence into a specific legal rule that this Court has not announced.' " (quoting *Marshall v. Rodgers*, 569 U.S. 58, 133 S.Ct. 1446, 1450, 185 L.Ed.2d 540 (2013))).

A state court's decision is contrary to clearly established federal law "if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if

the state court decides a case differently than [the Supreme] Court has on a set of materially

indistinguishable facts." *Williams v. Taylor*, 529 U.S. at 413.  By contrast, a state court's

decision involves an unreasonable application of clearly established federal law "if the state court

identifies the correct governing legal principle from [the Supreme] Court's decisions but

unreasonably applies that principle to the facts of the prisoner's case." *Id*.  *See also Shimel*, 838

F.3d at 695.  However, a federal district court may not find a state court's decision unreasonable

"simply because that court concludes in its independent judgment that the relevant state court

decision applied clearly established federal law erroneously or incorrectly." *Williams v. Taylor,*

529 U.S. at 411.  Rather, a federal district court must determine whether the state court's decision

constituted an objectively unreasonable application of federal law.  *Id*. at 410-12.  "This standard

generally requires that federal courts defer to state-court decisions." *Strickland v. Pitcher*, 162

Fed. Appx. 511, 516 (6th Cir. 2006) (citing *Herbert v. Billy*, 160 F.3d 1131, 1135 (6th Cir.

1998)).

        In *Harrington v. Richter*, 562 U.S. 86, 131 S.Ct. 770, 178 L.Ed.2d 624 (2011), the

Supreme Court held that as long as "fairminded jurists could disagree on the correctness of the

state court's decision," relief is precluded under the AEDPA.  *Id.* at 786 (internal quotation marks

omitted).  The Court admonished that a reviewing court may not "treat[ ] the reasonableness

question as a test of its confidence in the result it would reach under *de novo* review," and that

"even a strong case for relief does not mean the state court's contrary conclusion was

unreasonable." *Id*. at 785.  The Court noted that Section 2254(d) "reflects the view that habeas

corpus is a guard against extreme malfunctions in the state criminal justice systems" and does not

function as a "substitute for ordinary error correction through appeal." *Id*. (internal quotation

marks omitted).  Therefore, a petitioner "must show that the state court's ruling ... was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement."  *Id*. at 786–87.  This is a very high standard, which the Supreme Court readily acknowledged.  *See id.* at 786 ("If this standard is difficult to meet, that is because it is meant to be.")

### 1.     Ground One: Sufficiency of the Evidence

In his first ground for relief, Primeau argues his convictions were not supported by sufficient evidence.  (Doc. No. 9 at 13.)  Primeau asserts the evidence against him was based on "pure allegation and speculation," including "irrelevant anecdotes of neighbors and a pizza delivery man who claim to have heard sounds of people yelling and seen bruises or marks – all on *other* occasions unrelated to this incident."  (Doc. No. 24 at 12.)  Primeau contends "there was never any evidence presented that connected [him] to Higa's injuries aside from the misinterpretation of a gesture and what should have been inadmissible testimony of other acts." (*Id*. at 13.)

Respondent maintains "the evidence that Primeau was the perpetrator of the assault against Higa was substantial."  (Doc. No. 27 at 38.)  Respondent asserts "the DNA and other physical evidence blew a hole through Primeau's story during his interrogation that another person had perpetrated the crime" and "the testimony of Primeau's ex-wife, neighbors, the pizza delivery man and Higa herself provided ample evidence that Primeau, and not someone else, had beaten his wife to death."  (*Id*.)

The state appellate court considered Primeau's sufficiency of the evidence claim on direct appeal under the following standard:

29

{¶ 4} In the ninth assignment of error, Primeau argues that his convictions are against the manifest weight of the evidence. In his tenth assignment of error, he argues that the court erred in denying his Crim.R. 29 motion based on insufficient evidence.

{¶ 5} A challenge to the sufficiency of the evidence supporting a conviction requires the court to determine whether the State has met its burden of production at trial. *State v. Thompkins*, 78 Ohio St.3d 380, 390, 1997–Ohio–52, 678 N.E.2d 541. On review for sufficiency, courts are to assess not whether the State's evidence is to be believed, but whether, if believed, the evidence against a defendant would support a conviction. Id. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. *State v. Jenks*, 61 Ohio St.3d 259, 574 N.E.2d 492 (1991), paragraph two of the syllabus.

*State v. Primeau*, 2012 WL 5463019 at *1 (Ohio App. 8th Dist. Nov. 8, 2012).

The state appellate court then reviewed the evidence at trail, as set forth *supra*, and found

the following:

{¶ 30} Primeau argues that the State's case was based purely on circumstantial evidence and, therefore, his convictions are not supported by sufficient evidence and are against the manifest weight of the evidence. Proof of guilt may be made by circumstantial evidence, real evidence, and direct evidence, or any combination of the three, and all three have equal probative value. *State v. Nicely*, 39 Ohio St.3d 147, 529 N.E.2d 1236 (1988); Jenks, 61 Ohio St.3d 259, 574 N.E.2d 492. Moreover, "[c]ircumstantial evidence and direct evidence inherently possess the same probative value and therefore should be subjected to the same standard of proof." *Jenks* at paragraph one of the syllabus. Indeed, "[c]ircumstantial evidence * * * may also be more certain, satisfying and persuasive than direct evidence." *State v. Lott*, 51 Ohio St.3d 160, 555 N.E.2d 293 (1990). " '[C]ircumstantial evidence is sufficient to sustain a conviction if that evidence would convince the average mind of the defendant's guilt beyond a reasonable doubt.' " *State v. McKnight*, 107 Ohio St.3d 101, 2005–Ohio–6046, 837 N.E.2d 315, ¶ 75, quoting *State v. Heinish*, 50 Ohio St.3d 231, 238, 553 N.E.2d 1026 (1990). In the instant case, the State presented satisfying and persuasive circumstantial evidence illustrating that Primeau was Higa's assailant.

{¶ 31} Furthermore, "[i]n reaching its verdict, the jury is free to believe all, part, or none of the testimony of each witness." *State v. Jackson*, 86 Ohio

30

App.3d 29, 33, 619 N.E.2d 1135 (4th Dist.1993). "The weight to be given the evidence and the credibility of the witnesses are primarily for the trier of the facts." *State v. Richey*, 64 Ohio St.3d 353, 363, 1992–Ohio–44, 595 N.E.2d 915.

{¶ 32} Therefore, after viewing the evidence in a light most favorable to the prosecution, we find sufficient evidence to establish, beyond a reasonable doubt, that Primeau committed murder and felonious assault. Moreover, based on the aforementioned facts and circumstances, we find that the convictions are not against the manifest weight of the evidence. We cannot say that the jury lost its way and created a manifest injustice in convicting Primeau.

*State v. Primeau*, 2012 WL 5463019 at *5.

A petitioner who claims the evidence at trial was insufficient for a conviction must demonstrate that, "after viewing the evidence in the light most favorable to the prosecution, [no] rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979). *See also Scott v. Mitchell*, 209 F.3d 854, 885 (6th Cir. 2000). The role of the reviewing court in considering such a claim is limited:

A reviewing court does not reweigh the evidence or redetermine the credibility of the witnesses whose demeanor has been observed by the trial court. It is the province of the factfinder to weigh the probative value of the evidence and resolve any conflicts in testimony. An assessment of the credibility of witnesses is generally beyond the scope of federal habeas review of sufficiency of evidence claims. The mere existence of sufficient evidence to convict therefore defeats a petitioner's claim.

*Matthews v. Abramajtys*, 319 F.3d 780, 788-89 (6th Cir. 2003) (internal citations omitted).

Moreover, it is well established that "'attacks on witness credibility are simply challenges to the quality of the government's evidence and not to the sufficiency of the evidence.'" *Martin v. Mitchell*, 280 F.3d 594, 618 (6th Cir. 2002) (quoting *United States v. Adamo*, 742 F.2d 927, 935 (6th Cir.1984)).

31

Consistent with these principles, the Supreme Court has emphasized that habeas courts must review sufficiency of the evidence claims with "double deference:"

> We have made clear that *Jackson* claims face a high bar in federal habeas proceedings because they are subject to two layers of judicial deference.  First, on direct appeal, 'it is the responsibility of the jury—not the court—to decide what conclusions should be drawn from evidence admitted at trial.  A reviewing court may set aside the jury's verdict on the ground of insufficient evidence only if no rational trier of fact could have agreed with the jury.' *Cavazos v. Smith*, 565 U.S. 1, ——, 132 S.Ct. 2, 4, 181 L.Ed.2d 311 (2011) (per curiam).  And second, on habeas review, 'a federal court may not overturn a state court decision rejecting a sufficiency of the evidence challenge simply because the federal court disagrees with the state court.  The federal court instead may do so only if the state court decision was 'objectively unreasonable.' " *Id.* (quoting *Renico v. Lett*, 559 U.S. 766, ——, 130 S.Ct. 1855, 1862, 176 L.Ed.2d 678 (2010)).

*Coleman v. Johnson*, 566 U.S. 650, 132 S.Ct. 2060, 2062, 182 L.Ed.2d 978 (2012).  Under this standard, "we cannot rely simply upon our own personal conceptions of what evidentiary showings would be sufficient to convince us of the petitioner's guilt," nor can "[w]e ... inquire whether any rational trier of fact would conclude that petitioner ... is guilty of the offenses with which he is charged." *Brown v. Konteh*, 567 F.3d 191, 205 (6th Cir. 2009).  Rather, a habeas court must confine its review to determining whether the state court "was unreasonable in its conclusion that a rational trier of fact could find [petitioner] guilty beyond a reasonable doubt based on the evidence introduced at trial." *Id.* (emphasis in original) (citing *Knowles v. Mirzayance*, 129 S.Ct. 1411, 1420 (2009)).

Upon careful review of the trial transcript, the Court finds the state appellate court reasonably determined Primeau's convictions were supported by substantial evidence.  In resolving this claim, the state appellate court accurately summarized the evidence of record and correctly identified applicable law.

As noted in the state appellate court decision, Higa, the victim, was brought into the

emergency room by Primeau on March 12, 2011.  (Doc. No. 8-2 at Tr. 27.)  Primeau told the

emergency room physicians Higa had "gone to see a man about her immigration legal status" the

night prior and returned home the next morning by bus, badly beaten and sexually assaulted.  (*Id*.

at Tr. 39-40.)  When questioned by the police, Primeau again stated Higa had left their home on

the evening of March 10, 2011 and did not return until roughly 10:00 a.m. the next morning,

badly beaten.  (*Id* at Tr. 119.)  However, unlike his report to the emergency room staff, Primeau

told the police Higa had left the home that evening because she "went out to make money that

night to walk the streets as a prostitute."  (*Id.* at Tr. 119.)  Primeau reported Higa had told him an

African American male had picked her up and subsequently beat her because she would not

engage in anal sex.  (*Id.* at Tr. 120.)  Primeau explained he had attempted to care for Higa's

injuries at home, but eventually chose to bring her to the emergency room as her condition

worsened.  (*Id*. at Tr. 40)

　　　Upon examination, the emergency room physician, Dr. Grant Comnick, noted Higa had

sustained many external injuries, including facial edema and bruising, hemorrhages in her eyes,

abdominal tenderness, and extensive bruising on her extremities.  (*Id.* at Tr. 28-31.)  Dr. Michael

Taylor, another emergency room physician, testified Higa's bruises appeared to be of different

ages.  (Doc. No. 8-4 at Tr.107.)  He estimated some of the bruises occurred the day of her

hospital admission, while others likely occurred a day or two prior.  (*Id.* at Tr.108.)

　　　It was eventually determined Higa was in septic shock and had a perforation in her bowel,

which required surgery.  (Doc. No. 8-2 at Tr. 41, 44.)  Dr. Taylor, who performed Higa's

abdominal operations, estimated the perforation in her bowel had occurred about six hours prior

to Higa's admission to the operating room, based upon the swelling and fluid in her abdomen.

(Doc. No. 8-4 at Tr.115-116, 142, 144.)  Higa eventually died after two abdominal operations and several days in the intensive care unit.  (*Id.* at Tr. 129.)  An autopsy was performed, and the cause of death was determined to be homicide, due to blunt impact to her abdomen.  (*Id.* at Tr. 286-287.)  Additional blunt traumatic injuries to her head, trunk, and extremities contributed to her death.  (*Id*. at Tr. 286.)

Prior to her death, Higa underwent a sexual assault medical examination in the emergency room.  Elizabeth Petitt, a registered sexual assault nurse examiner ("SANE"), testified when she asked Higa who had assaulted her, she pointed to her wedding ring.  (Doc. No. 8-3 at Tr. 111,112.)  Ms. Petitt stated when she asked Higa if it was her husband who had assaulted her, Higa shook her head yes and no.  (*Id.* at Tr. 112.)  Higa then wrote "black guy" on a note to Ms. Petitt.  (*Id.*)  While performing the rape kit on Higa, Ms. Petitt observed substantial edema and bruising in the vaginal area, so much so she was unable to insert a speculum.  (*Id.* at Tr.114, 115,131.)  Anal swabs from Higa's rape kit revealed a DNA mixture from Higa and Primeau. (Doc. No. 8-4 at Tr. 74.)  DNA testing of Higa's underwear was consistent with DNA from both Higa and Primeau.  (*Id*. at Tr.75.)  Semen was identified on Higa's sweatpants, and DNA testing was consistent with the DNA profiles of Higa and Primeau.  (*Id.* at Tr. 51, 80.)

Marie Balcerski, another nurse in the emergency room, testified when she asked Higa who had assaulted her, Higa pointed to her left hand ring finger and to the chair where Primeau had been sitting.  (Doc. No. 8-3 at Tr.197.)  Later on, when asked again who had assaulted her, Higa spelled out the word "black man."  (*Id.* at Tr.199.)  Higa also wrote a note to Nurse Balcerski stating "my husband didn't do that."  (*Id.* at Tr. 201.)

A Cleveland Police detective, Beverly Fraticelli, went to visit Higa while she was in the

34

hospital.  (Doc. No. 8-2 at Tr. 61.)  Higa was unable to speak due to being intubated, but she

shook her head when asked if Primeau had assaulted her and wrote down "black guy."  (*Id.* at Tr.

61, 66, 67.)  Higa also wrote "He wanna ass sex, just ass sex, but I don't so he pissed, he hit me a

lot."  (*Id.* at Tr. 67.)

Thomas Harrington, a detective with the Fairview Police Department, was present when

Detective Fraticelli questioned Higa.  (Doc. No. 8-5 at Tr. 14.)  Detective Harrington realized

two different stories were beginning to emerge – one in which an African American male had

assaulted Higa on West 25th Street and another in which Primeau, her husband, had caused her

injuries.  (*Id.* at Tr. 16, 17.)  Detective Harrington obtained a search warrant of Primeau's

residence, in order to obtain the clothing Higa had been wearing at the time of the assault.  (*Id.* at

Tr. 20.)  The search of the apartment revealed bodily fluids, including blood, vomit, and tufts of

hair, and damage to the door and living room wall.  (*Id.* at Tr. 43, 44.)  Detective Harrington also

found a receipt from a grocery store, with a time stamp of 4:57 p.m on March 11, 2011, which

was in conflict with Primeau's assertion he had been tending to his wife from 10:00 a.m to 9:00

p.m. that day.  (*Id.* at Tr. 45-46.)

Harrington testified he attempted to find evidence to support Primeau's version of events.

(*Id.* at Tr. 54.)  He contacted RTA, inquiring if there were any reports of an injured women

matching Higa's description getting on a bus in the West 25th area.  (*Id.* at Tr. 54-55.)  A

detective from the RTA testified none of the operators had reported anyone on a bus in physical

distress on March 10 or 11, despite protocol to do so.  (Doc. No. 8-2 at Tr. 105.)  Detective

Harrington also reviewed video surveillance from a gas station near the bus stop closest to

Primeau's and Higa's apartment.  This video did not reveal Higa getting off the bus on the

35

morning of March 11, 2011.  (Doc. No. 8-5 at Tr. 55-57.)

The State also presented testimony from several neighbors and a pizza delivery driver. Nicholas Lovano, the pizza delivery driver, testified there had been numerous instances where he observed Higa having bruises, marks, or a black eye when delivering pizza to Primeau's and Higa's apartment.  (Doc. No. 8-2 at Tr. 142.)  Four of Primeau's neighbors also testified regarding various noises they had heard coming from Primeau's and Higa's apartment.  Each of these neighbors testified they had heard a loud, angry male voice on various occasions.  (Doc. No. 8-3 at Tr. 16-17, 27-28, 59, 85-86.)  One of these neighbors testified she heard someone being hit and a female voice crying from the hit on two occasions.  (*Id.* at Tr. 61-62.)  This same neighbor also recalled hearing a  pounding sound coming from the apartment on March 11, 2011. (*Id.* at Tr. 64.)  Another neighbor testified she had heard thumping noises, along with an angry male voice, coming from the apartment in late 2010.  (*Id*. at Tr. 85, 86.)  She further testified that on March 10, 2011 she heard loud noises, which sounded like wrestling, coming from the apartment.  (*Id* at Tr. 88.)  She stated the noises were so loud that "it sounded like they were going to come through the floor."  (*Id.* at Tr. 92.)

Primeau's friend, Adam Rodeghiero, testified he spoke with Primeau on the phone on March 10 and 11, 2011.  (*Id*. at Tr. 41, 42, 47-49.)  He stated Primeau told him Higa was "ill" and he was not sure if she was faking for sympathy.  (*Id*. at Tr. 44, 47-49.)  Rodeghiero advised Primeau to take Higa to the hospital.  (*Id.*)  He testified Primeau did not mention anything about Higa being physically assaulted.  (*Id.* at Tr. 50.)

Primeau's ex-wife, Tiffany Redding, also provided testimony.  (Doc. No. 8-4 at Tr. 194.) She testified Primeau was physically abusive when they were married, and she had sustained

36

head, abdominal, and face injuries from the abuse.  (*Id.* at Tr. 200, 204.)  She did not seek

medical attention for some of these injuries because Primeau would not allow her to visit the

hospital.  (*Id.* at Tr. 202.)  Ms. Redding also testified there were times Primeau would not allow

her to leave their home due to her injuries, or they would need to coordinate a story to explain

her injuries.  (*Id.* at Tr. 202-203.)  Ms. Redding did visit the hospital on one occasion after he had

struck her abdominal area several times.  (*Id.* at Tr. 204.)  Ms. Redding testified she and Primeau

lied to the hospital staff when she arrived, stating she had gotten her injury from Judo practice.

(*Id.* at Tr. 205.)

Upon review of this evidence, the Court finds the state appellate court reasonably

concluded sufficient evidence supported the jury's findings as to each element of the charges[11]

against Primeau.  An autopsy confirmed Higa's cause of death as homicide due to blunt impact to

her abdomen.  (Doc. No. 8-4 at Tr. 286-287.)  There is ample evidence it was Primeau who

caused Higa's injuries and eventual death.  Higa had indicated to two emergency nurses it was

Primeau who had assaulted her.  (Doc. No. 8-3 at Tr. 111,112, 197.)  Neighbors living in their

apartment complex had heard sounds of a struggle coming from their apartment on March 10 and

---

[11] At the time of Primeau's convictions, O.R.C. §2903.11 defined felonious assault, in pertinent part, as "[n]o person shall knowingly * * * [c]ause serious physical harm to another."

At the time of Primeau's convictions, O.R.C. § 2903.02(A) and (B) defined murder as:

(A) No person shall purposely cause the death of another ***.

(B) No person shall cause the death of another as a proximate result of the offender's committing or attempting to commit an offense of violence that is a felony of the first or second degree and that is not a violation of section 2903.03 or 2903.04 of the Revised Code.

11, 2011.  (Doc. No. 8-3 at Tr. 64, 88, 92.)  A search of the apartment revealed blood, tufts of hair, and damage to the door and walls of the apartment.  (Doc. No. 8-5 at Tr. 43-44.)  Moreover, Primeau had provided two conflicting stories as to why Higa left the apartment that night, and an investigation by police revealed no evidence to support his version of events.  (Doc. No. 8-2 at Tr. 39-40, 119, Doc. No. 8-5 at Tr. 45, 55-57.)  Primeau also reported Higa had been sexually assaulted by an unknown African American male.  However, while the sexual assault examination revealed significant swelling and trauma to Higa's vaginal area, DNA testing only yielded results from Primeau and Higa.  (Doc. No. 8-4 at Tr. 74, 75, Doc. No. 8-3 at Tr. 114, 115, 131.)

Primeau is emphatic about Higa's inconsistent identification of Primeau as the perpetrator, asserting the jury's verdict was based upon a "misinterpretation of a gesture."  (Doc. No. 24 at 13.)  It is true Higa providing conflicting information as to who assaulted her, initially indicating to the nursing staff it was her husband and then asserting it was a "black man."  (Doc. No. 8-3 at Tr. 197, 111-112, 199.)  However, the police investigation, as well as DNA evidence, did not provide any substantiation to the claims it was an unknown assailant.  Rather, the testimony of the neighbors, Primeau's own conflicting reports, and the search of the apartment supported Higa's initial assertion it was her husband who had assaulted her.

Moreover, Primeau's trial counsel addressed the discrepancies and inconsistencies in Higa's identification her attacker during the course of trial.  The trier of fact was able to consider these consistencies and weaknesses in the State's case and make a determination based on the evidence as a whole.  It is not this Court's role to re-weigh the evidence or make factual findings. *Gipson v. Sheldon*, 2015 WL 1980244, *6 (N.D. Ohio May 1, 2015).

38

Primeau argues the evidence provided by the State was based upon "pure allegation and speculation," including "irrelevant anecdotes of neighbors and a pizza delivery man."  (Doc. No. 24 at 12.)  The Court disagrees.  Two of the neighbors specifically testified they had heard sounds of a struggle on March 10 and 11, 2011, the days prior to Higa's admission to the hospital.  (Doc. No. 8-2 at Tr. 64, 88.)  One of the neighbors testified to hearing a noise so loud "it sounded like they were going to come through the floor" on March 11, 2011.  (*Id.* at Tr. 92.) Moreover, the testimony from the other neighbors and the pizza delivery driver provided circumstantial evidence of a history of physical abuse between Higa and Primeau, which was relevant to the State's theory Higa had changed her story due to the cycle of domestic abuse.

Primeau points to a lack of direct evidence to connect him to Higa's assault.  (Doc. No. 24 at 13.)  Whether evidence is direct or circumstantial has no impact on the question of sufficiency.  *See United States v. Algee*, 599 F.3d 506, 512 (6th Cir.2010) ("Circumstantial evidence alone is sufficient to sustain a conviction and such evidence need not remove every reasonable hypothesis except that of guilt.").  It is the responsibility of the jury to resolve any conflicts which may be presented in testimony.  It is beyond the scope of this Court's review to re-assess the credibility of the witnesses. *Matthews*, 319 F.3d at 788–89.  Primeau is challenging the quality, but not the sufficiency, of the evidence and this does not warrant an award of habeas relief.

In sum, the Court finds the state appellate court reasonably applied clearly established federal law when it considered Primeau's argument there was insufficient evidence to support his convictions.  There is no basis for this Court to conclude the state court decision in this case was contrary to, or involved an unreasonable application of, clearly established federal law.

39

Accordingly, it is recommended Primeau's First Ground for Relief be denied.

### 2.    Ground Two and Three– Propensity and Other Acts Evidence

In his second and third grounds for relief, Primeau argues the state trial court violated his

rights to due process and a fair trial when it admitted the following testimony: (1) a police

officer's statements relating to a prior domestic violence call at Primeau's residence; (2) a pizza

delivery driver's observations of Higa having bruises and marks on her when delivering pizza to

her residence; (3) multiple neighbors stating they had heard yelling and loud noises coming from

Primeau's and Higa's apartment; and (4) Primeau's ex-wife's testimony regarding domestic

abuse she experienced during their marriage.  (Doc. No. 24 at 15, 16.)  He asserts the admission

of the ex-wife's testimony was particularly unfair because the state trial court had initially

excluded it.  (*Id.* at 16.)

Respondent contends[12] Primeau's second and third grounds for relief are not cognizable

under federal habeas review because they rely on state law.  (Doc. No. 27 at 25, 27.)  Respondent

asserts "the introduction of evidence of prior acts, even for the purpose of demonstrating

propensity" does not rise to the level of violating due process.  (*Id.* at 26.)  Respondent argues

Primeau has not shown this testimony "rendered his trial fundamentally unfair" and the

---

[12]    The Court notes the Respondent, in his initial Return of Writ, argued Grounds Two
and Three were procedurally defaulted because Primeau did not fairly present them
to the state courts as federal constitutional claims.  (Doc. No. 7 at 22, 23.)  A review
of Primeau's state court filings reveal the bulk Primeau's arguments on direct appeal
were predicated on Ohio case law and violations of the Ohio Rules of Evidence.
(*See* Doc. No. 7-1, Exh. 10, 19.)  However, Primeau did make a bare bones
constitutional argument – citing to a Sixth Circuit case regarding other acts evidence,
a Supreme Court decision, and his right to a fair trial.  (*Id.*)  Out of an abundance of
caution, the Court declines to consider these grounds for relief procedurally defaulted
and will consider them on the merits.

testimony was "introduced to show intent, a permissible exception under Ohio law to the

prohibition against evidence of other acts."  (*Id.* at 27, 28.)

Primeau raised these claims on direct appeal to the state appellate and state supreme

court.  (Doc. No. 7-1, Exh. 10, 19.)  The state appellate court rejected these claims as follows:

{¶ 41} Primeau argues that the "other acts" evidence, including testimonial
evidence from his ex-wife, the pizza delivery man, the apartment neighbors,
and the police did not fall under any of the Evid.R. 404 exceptions and thus,
should have been excluded.

{¶ 42} Pursuant to Evid.R. 404(B), evidence of other acts that are wholly
independent of the crime charged is generally inadmissible. *State v.
Thompson*, 66 Ohio St.2d 496, 497, 422 N.E.2d 855 (1981). Trial court
decisions regarding the admissibility of other-acts evidence under Evid.R.
404(B) are evidentiary determinations that rest within the sound discretion of
the trial court. Appeals of such decisions are reviewed by an appellate court
for an abuse of discretion. *State v. Morris*, 132 Ohio St.3d 337,
2012–Ohio–2407, 972 N.E.2d 528. "The term 'abuse of discretion' connotes
more than an error of law or judgment; it implies that the court's attitude is
unreasonable, arbitrary or unconscionable." *Blakemore v. Blakemore*, 5 Ohio
St.3d 217, 219, 450 N.E.2d 1140 (1983).

{¶ 43} Pursuant to Evid.R. 404(B), "[e]vidence of other crimes, wrongs, or
acts is not admissible to prove" a defendant's character as to criminal
propensity. "It may, however, be admissible for other purposes, such as proof
of motive, opportunity, intent, preparation, plan, knowledge, identity, or
absence of mistake or accident." *Id*. In *State v. Curry*, 43 Ohio St.2d 66, 68,
330 N.E.2d 720 (1975), the Ohio Supreme Court explained when other acts
evidence is admissible pursuant to the "scheme, plan, or system" exception:
evidence of a defendant's scheme, plan, or system in doing an act is only
relevant in two situations: (1) the other acts are part of one criminal
transaction such that they are inextricably related to the charged crime, or (2)
a common scheme or plan tends to prove the identity of the perpetrator. *Id*. at
72–73. *See also State v. Williams*, 195 Ohio App.3d 807, 2011–Ohio–5650,
961 N.E.2d 1203 ¶ 50 (8th Dist.)  "Identity is in issue when the fact of the
crime is open and evident but the perpetrator is unknown and the accused
denies that he committed the crime." *State v. Ogletree*, 8th Dist. No. 94512,
2011–Ohio–819, ¶ 36, *appeal not accepted*, 129 Ohio St.3d 1409,
2011–Ohio–3244, 949 N.E.2d 1004, citing *State v. Smith,* 84 Ohio App.3d
647, 666, 617 N.E.2d 1160 (2d Dist.1992).

41

{¶ 44} The State argues that Redding's testimony and the evidence of other acts was admissible because it tended to show Primeau's scheme, plan, or system of physically abusing his wives and refusing to allow them medical treatment unless they agreed to lie about the circumstances of their injuries, which tends to prove the identity of the perpetrator in the instant case.

> In *State v. Bey*, 85 Ohio St.3d 487, 1999–Ohio–283, 709 N.E.2d 484, certiorari denied, 528 U.S. 1049, 120 S.Ct. 587, 145 L.Ed.2d 488 (1999), the Ohio Supreme Court affirmed the trial court's decision allowing other acts evidence to show identity, finding that the other acts evidence established a "behavioral fingerprint" linking the appellant to the crime due to the common features. The Court noted that the deaths of the current and prior victims occurred under nearly identical circumstances: both victims were businessmen who were killed at their place of business, both died after being stabbed with a knife in the chest, both men had their trousers removed and their shoes were placed next to their bodies, and although both businesses were robbed, jewelry was left on each person. *Id*. at 491. The Court found that because the evidence demonstrated a similar method of operation, it was probative of identity. *Id.*

*Williams* at ¶ 55.

{¶ 45} In the instant case, the identity of the perpetrator is clearly a central issue. The State argues that, as in *Bey*, the injuries sustained by Redding and Higa occurred under nearly identical circumstances; both victims were married to Primeau, both were physically abused in the marital home, both suffered serious injuries to their abdomens, and both needed immediate medical attention that Primeau withheld until they agreed to lie about how they sustained their injuries. Redding was married to Primeau from 2003 to 2009, near in time to the alleged assault of Higa.

{¶ 46} Furthermore, the testimony from the pizza delivery man that he had observed bruises on Higa on multiple occasions, and from the neighbors who heard yelling and loud noises from Higa and Primeau's apartment on multiple occasions, tended to prove the identity of the attacker in the instant case. Det. Thomas Harrington testified that he had responded to a December 2010 domestic abuse call from Higa at the apartment she shared with Primeau. Therefore, we find that the court did not err in admitting the testimonial evidence of Primeau's prior bad acts because it was offered for a valid purpose under Evid.R. 404(B).

{¶ 47} However, even if a court finds that the other acts evidence was offered for a valid purpose under Evid.R. 404(B), the court must still consider

42

whether the evidence is substantially more prejudicial than probative; if so, then it must still be excluded because of its deleterious effects on an accused's right to a fair trial. *See State v. Matthews*, 14 Ohio App.3d 440, 471 N.E.2d 849 (8th Dist.1984); Evid.R. 403(A).

{¶ 48} There is no doubt that the "other acts" evidence was prejudicial. However, the trial court did not err in finding that the probative value of the "other acts" evidence outweighed any prejudicial effect. Thus, we find no abuse of discretion.

*State v. Primeau*, 2012 WL 5463019 at *7-9.

To the extent Primeau argues the state trial court violated Ohio Evidence Rules in allowing in the testimony in question, the Court agrees with Respondent this claim is not cognizable on federal habeas review.  "[E]rrors in application of state law, especially with regard to the admissibility of evidence, are usually not cognizable in federal habeas corpus."  *Walker v. Engle,* 703 F.2d 959, 962 (6th Cir.1983 ).  *See also Coleman v. Mitchell*, 244 F.3d 533, 542-543 (6th Cir. 2001); *Wilson v. Sheldon*, 874 F.3d 470, 475-476 (6th Cir. 2017).  Indeed, under AEDPA, a state trial court has wide latitude in ruling on evidentiary matters.  *Wilson*, 874 F.3d at 476.  A federal court, when considering a habeas petition, may not grant the petition merely because it disagrees with a state court's evidentiary ruling.  *Wilson v. Warden, Ross Corr. Inst.*, 2013 WL 6859869, at *14 (N.D. Ohio Dec. 30, 2013).

Regardless, when an evidentiary ruling is so egregious that it results in a denial of fundamental fairness, it may violate due process and warrant habeas relief.  *Coleman*, 244 at F.3d at 542.  However,  "courts have defined the category of infractions that violate fundamental fairness very narrowly." *Wright v. Dallman,* 999 F.2d 174, 178 (6th Cir. 1993)(internal quotations and citation omitted).  A state court's evidentiary ruling will not rise to the level of a due process violation unless it "offend[s] some principle of justice so rooted in the traditions and

43

conscience of our people as to be ranked as fundamental."  *Seymour,* 224 F.3d at 552.  Further, a federal court may only grant relief if a petitioner is able to show the state court's evidentiary ruling was in conflict with a Supreme Court decision on a question of law or if the state court decided the evidentiary issue differently than the Supreme Court on a set of "materially indistinguishable facts."  *Sanders v. Freeman*, 221 F.3d 846, 860 (6th Cir.2000)(quoting *Williams v. Taylor*, 120 S. Ct. 1495, 1523 (2000).  *See also Majid v. Noble*, 2018 WL 5008554, at *9-10 (6th Cir. Oct. 16, 2018)("This court almost never grants habeas relief based on state court evidentiary decisions.").

        This Court finds Primeau is unable to meet this difficult standard and concludes the state appellate court's decision is not contrary to, or an unreasonable application of, clearly established federal law.  Primeau argues the state trial court violated his right to due process and a fair trial by admitting other "bad acts" evidence.  The Sixth Circuit specifically rejected this argument in *Bugh v. Mitchell*, 329 F.3d 496, 512 (6th Cir. 2003).  The *Bugh* court held "the admission of prior bad acts evidence was not contrary to clearly established Supreme Court precedent.  There is no clearly established Supreme Court precedent which holds that a state violates due process by permitting propensity evidence in the form of other bad acts evidence."  *Id.* at 512.  The Sixth Circuit has recently acknowledged its holding in *Bugh*, noting a court must "focus AEDPA deference on whether the trial court's particular state-law evidentiary error implicates the Constitution, not on how the error affected [a petitioner's] trial."  *Bojaj v. Berghuis*, 702 Fed. App'x 315, 320 (6th Cir. June 24, 2017).

        Primeau erroneously relies on *Old Chief v. United States*, 519 U.S. 172, 117 S.Ct. 644,

136 L.Ed.2d 574 (1997) to support his claims[13] in Grounds Two and Three.  (Doc. No. 1 at 14-16, Doc. No. 24 at 14-17.)  However, *Old Chief* ruled on the admissibility of "prior bad acts" under the Federal Rules of Evidence, not the Ohio Rules of Evidence, and made no finding as to whether the admission was a violation of the United States Constitution.  *See Old Chief*, 519 U.S. at 180–92, 117 S.Ct. 644.  *See also Bugh*, 329 F.3d at 513 ("While the Supreme Court has addressed whether prior acts testimony is permissible under the Federal Rules of Evidence, see *Old Chief v. United States*, 519 U.S. 172, 117 S.Ct. 644, 136 L.Ed.2d 574 (1997); *Huddleston v. United States*, 485 U.S. 681, 108 S.Ct. 1496, 99 L.Ed.2d 771 (1988), it has not explicitly addressed the issue in constitutional terms.").

Thus, absent any clearly established Supreme Court precedent to the contrary, this Court cannot find Primeau was denied due process and a fundamentally fair trial due to the admission of the testimony from Primeau's ex-wife, the police officer, the neighbors, and the pizza delivery driver.  *See Wilson*, 2013 WL 6859869 at *15-16; *Goldick*, 2013 WL 2377638 at *9-10; *Meyers v. Tibbels*, 2015 WL 1980631, at *6 (N.D. Ohio Apr. 30, 2015).

Accordingly, the Court recommends Ground Two and Three of Primeau's Petition be DENIED.

---

[13]    Primeau, in Ground Three, also complains the state trial court had reversed its prior ruling regarding the admission of his ex-wife's testimony.  (Doc. No. 24 at 16.)  A review of the trial transcript indicates the state trial court had made a preliminary ruling at the beginning of the trial to exclude the ex-wife's testimony.  The state trial court, after receiving additional information and case law, later allowed for the ex-wife to testify.  (Doc. No. 8-4 at Tr. 152-178.)  Again, Primeau points to no clearly established federal precedent which was violated when the state trial court changed its initial ruling regarding the ex-wife's testimony, beyond vaguely asserting he was denied a fair trial under the Fifth and Fourteenth Amendments.  (Doc. No. 24 at 16.)

### 3.      Grounds Four and Five – Withholding A Witness Statement

In his fourth ground for relief, Primeau contends the State withheld the written statement

of his ex-wife, Tiffany Redding, "until merely days before the commencement of trial."  (Doc.

No. 24 at 18.)  Primeau argues the State "had known about Redding for months . . . yet did not

elicit a statement from her until late December and then did not provide a copy of that statement

to Mr. Primeau until the end of December."  (*Id.*)  In his fifth ground for relief, Primeau asserts

the state trial court should have excluded Ms. Redding's testimony "as a sanction for [the State]

violating the rules of discovery."  (*Id.*)

Respondent maintains a claim a state prosecutor violated state discovery rules in not

cognizable in federal habeas proceedings.  (Doc. No. 27 at 29.)  Respondent argues "Primeau

cites no federal case or constitutional rule that stands for the proposition that this discovery

violation creates a constitutional claim."  (Doc. No. 7 at 38.)  Respondent asserts since Primeau

"has not demonstrated that he was prejudiced by the allegedly late disclosure, a *Brady* violation

does not exist."  (Doc. No. 27 at 30.)

Primeau raised these claims on direct appeal[14] to the state appellate and state supreme

---

[14]      On direct appeal, Primeau argued the state trial court erred when it permitted Tiffany
Redding to testify without compelling the State to produce medical records proving
alleged prior acts of domestic violence, in violation of Ohio R. Evid. 16.  (Doc. No.
7-1, Exh. 10.)   Within this argument, Primeau also asserted the State had
"intentionally delayed the submission of [Redding's] written statement in order to
gain a tactical advantage . . . [and he was] prejudiced by the Court's failure to
sanction the State for its violation of the discovery rule."  Similar to Grounds Two
and Three, the bulk of Primeau's arguments at the state court level are predicated on
the Ohio Rules of Evidence and Ohio case law.  (*See* Doc. No. 7-1, Exh. 10, 19.)
However, Primeau did make a minimal constitutional argument – asserting the
discovery violation had violated his due process rights.  (*Id.*)  Thus, while it is
conceivable to find these grounds procedurally defaulted, as a constitutional question
may not have been sufficiently presented to the state courts, the Court, out of an

46

court. (Doc. No. 7-1, Exh. 10, 19.) The state appellate court rejected these claims as follows:

> {¶ 50} In the fourth assignment of error, Primeau argues that the trial court erred when it allowed Tiffany Redding to testify without compelling the State to produce medical records proving alleged prior acts of domestic violence, and that such a discovery violation under Crim.R. 16 violated Primeau's due process rights.

> {¶ 51} Crim.R. 16 requires the State to provide copies of items related to discovery for the defense. This rule applies to items obtained by or belonging to the State. The rule does not require the State to obtain items requested by the defense that the State does not already possess.

> {¶ 52} Primeau argues that he was not allowed access to Redding's medical records. However, a review of the record shows that defense counsel raised this issue prior to jury selection, and the court granted him time to procure the records himself, agreeing to sign an affidavit in support if needed. Primeau has failed to show that the records were within the State's possession, custody, or control, and that the State withheld them from the defense.

> {¶ 53} Primeau also argues that the State intentionally delayed the submission of Redding's written statement to police. Primeau fails to prove this allegation or to establish how he was prejudiced by the alleged delay.

> {¶ 54} Thus, we find that Primeau has failed to show that his due process rights were violated by the State's failure under Crim.R. 16 to provide Redding's medical records, as he did not show that the records were in the State's possession at any time.

> {¶ 55} Accordingly, the fourth assignment of error is overruled.

*State v. Primeau*, 2012 WL 5463019 at *9.

     To the extent Primeau argues the prosecutor violated state discovery rules in delaying the submission of Ms. Redding's statement, the Court agrees with Respondent this claim is not cognizable on federal habeas review. Claims a prosecutor violated state discovery rules is not

---

abundance of caution, declines to consider these grounds for relief procedurally defaulted.

47

cognizable in federal habeas review because it is not a constitutional violation.  *Lorraine v. Coyle*, 291 F.3d 416, 441 (6th Cir.2002).  *See Hicks v. Collins*, 384 F.3d 204, 219 (6th Cir. 2004); *Muntaqim-Bey v. Rapelje*, 2017 WL 1738025 (E.D. Mich. May 4, 2017); *Kwasny v. Stewart*, 2017 WL 1279230 (E.D. Mich. Apr. 6, 2017)("Is it well-settled that there is no constitutional right to discovery in a criminal case.").  *See also Weatherford v. Bursey*, 429 U.S. 545, 559 (1977)(denying due process claim of a defendant who was convicted with aid of surprise testimony from an accomplice who was an undercover agent).

To the extent Primeau contends the alleged violation of the discovery rules violated his due process rights, this claim fails as well.  Primeau asserts his due process rights were violated because the prosecutor withheld "the written statement of Tiffany Redding until merely days before commencement of trial," which "amounted to trial by ambush."  (Doc. No. 24 at 18.) However, Primeau has not identified[15] any clearly established federal law demonstrating his due process rights were violated under these circumstances.  Indeed, the Sixth Circuit has found the delayed disclosure of a witness statement by the government does not violate a defendant's right to a fair trial.  *U.S. v. Bencs*, 28 F.3d 555, 560-561 (6th Cir. 1994).  *See also United States v. Brazil*, 395 Fed. App'x 205 (6th Cir. 2010)(finding the government did not violate due process by waiting to disclose the full transcript of a witness until just before the witness testified.); *Olivo v. Lafler*, 2007 WL 1747154, at *4-5 (E.D. Mich. June 18, 2007)("any claim that the late

---

[15]     The Court notes Respondent references *Brady v. Maryland*, 373 U.S. 83 (1963) when addressing this claim in his Supplemental Return of Writ.  (Doc. No. 27 at 29.) However, Primeau has not asserted a *Brady* claim.  Moreover, *Brady* generally does not apply to the delayed disclosure of information, but only to the complete failure of the prosecutor to disclose such information. *See United States v. Davis*, 306 F.3d 398, 421 (6th Cir.2002) (internal citations omitted).

48

disclosure of these discovery material may have precluded defense counsel from adequate trial preparation is non-cognizable").  Thus, the state appellate court's determination Primeau's due process rights were not violated is not unreasonable or contrary to clearly established federal law.[16]

Primeau also argues the state trial court violated his due process rights when it failed to sanction the prosecution for its delayed disclosure of Ms. Redding's statement.  He asserts the state trial court should have excluded Ms. Redding's testimony entirely.  (Doc. No. 1 at 17.)  The Court finds this claim is not cognizable on federal habeas review.  As noted *supra,* a state trial court has wide latitude in ruling on evidentiary matters.  *Seymour v. Walker*, 224 F.3d 542 (6th Cir. 2000).  A federal court, when considering a habeas petition, may not grant the petition merely because it disagrees with a state court's evidentiary ruling.  *Wilson v. Warden, Ross Corr. Inst.*, 2013 WL 6859869, at *14 (N.D. Ohio Dec. 30, 2013).

With respect to Primeau's due process argument, a state court evidentiary ruling generally does not rise to the level of a due process violation unless it "offend[s] some principle of justice so rooted in the traditions and conscience of our people as to be ranked as fundamental." *Seymour,* 224 F.3d at 552.  Further, a federal court may only grant relief if a petitioner is able to show the state court's evidentiary ruling was in conflict with a decision reached by the Supreme Court on a question of law or if the state court decided the evidentiary issue differently than the Supreme Court did on a set of materially indistinguishable facts.  *Sanders v. Freeman*, 221 F.3d

---

[16]    The Court finds the Prosecutor's seemingly deliberate decision to decline to take a statement from Ms. Redding until days prior to the trial, despite being well aware of Ms. Redding for months prior, troubling.  Regardless, as the Prosecutor's behavior, however outrageous it may appear, does not violate any clearly established federal law or precedent, it cannot warrant habeas relief.

846, 860 (6th Cir.2000)(quoting *Williams v. Taylor*, 120 S. Ct. 1495, 1523 (2000).

Here, Primeau has not identified any clearly established federal law that establishes a due process violation under analogous circumstances.  Primeau cites to *Taylor v. Illinois,* 484 U.S. 400 (1988) to support his argument the state trial court should have excluded Redding's testimony to sanction the prosecution.  (Doc. No. 24 at 18.)  However, *Taylor v. Illinois* does not stand for the proposition a trial court violates a defendant's due process rights by failing to exclude testimony as a sanction for violating discovery rules.  Rather, the Supreme Court in *Taylor* held it may be appropriate, under certain circumstances, for a trial court to preclude testimony as a sanction for violating discovery rules.  *Taylor*, 484 U.S. at 409-410.  Primeau is unable to demonstrate the state trial court rulings, and the state appellate court's affirmation of these rulings, are contrary to clearly established federal law.

Thus, absent any clearly established Supreme Court precedent to the contrary, this Court cannot find Primeau was denied due process and a fundamentally fair trial due to the state's alleged withholding of a witness statement and the trial court's admission of Ms. Redding's testimony.  This Court concludes the state appellate court's decision is not contrary to, or an unreasonable application of, clearly established federal law.

Accordingly, the Court recommends Ground Four and Five of Primeau's Petition be DENIED.

### 6.     Ground Seven – References to Post-Arrest Silence/*Doyle* Claim

In his seventh ground for relief, Primeau contends his constitutional rights were violated

under *Doyle v. Ohio* when the State elicited testimony from Officer Rutt[17] regarding his "overly calm" post arrest demeanor.  (Doc. No. 24 at 22.)  Primeau argues because Officer Rutt's testimony was used to "equate[] his silence to guilt, thereby insinuating guilt," it prejudiced the jury against him.  (*Id.* at 24.)  Respondent argues this claim is meritless.  (Doc. No. 7 at 44; Doc. No. 27 at 41-42.)

The state appellate court considered this claim on direct appeal and rejected it as follows:

{¶ 77} In his eighth assignment of error, Primeau argues that the trial court erred when it allowed Officer Rutt to render an opinion that Primeau's exercising his Fifth Amendment right to remain silent was unusual, "thus insinuating that his silence was telling and he must be, in fact, guilty."

{¶ 78} A thorough review of the record reveals that Rutt did not offer his opinion as to Primeau's guilt or innocence. Rutt merely stated that it is unusual for someone he arrests to remain quiet. He testified that when being placed under arrest, Primeau was very calm, said nothing, and showed no emotion. Neither Rutt nor the State made any mention of guilt.

{¶ 79} As stated in the previous assignment of error, pursuant to Evid.R. 701, Rutt's testimony about his experience in arresting people falls within the scope of the rule's requirement that a lay witness's opinion be rationally based on firsthand observations and helpful in determining a fact in issue. Rutt's opinion was based upon his personal knowledge and experience. *See McKee*, 91 Ohio St.3d 292, 2001–Ohio–41, 744 N.E.2d 737. Therefore, his testimony was properly admitted under Evid.R. 701 and we find no abuse of discretion.

{¶ 80} Accordingly, the eighth assignment of error is overruled.

---

[17]     Primeau also asserts the State violated his constitutional rights when it elicited similar testimony from Officer Hartman.  (Doc. No. 24 at 22.)  A review of the state court record indicates Primeau did not present any argument regarding Officer Hartman's testimony to the state courts.  (*See* Doc. No. 7-1, Exh. 10, 19.)  Thus, Primeau's claims regarding Officer Hartman are procedurally defaulted.  *See Engle v. Issac*, 456 U.S. 107, 125 n. 28 (1982) (noting that if an Ohio petitioner failed to raise a claim on direct appeal, which could have been raised, the claim is procedurally defaulted.)

*State v. Primeau*, 2012 WL 5463019 at *12.

In *Doyle v. Ohio*, 426 U.S. 610, 618 (1976), the Supreme Court held a prosecutor violates a defendant's due process rights by using the defendant's post-arrest silence after receiving *Miranda* warnings to impeach the defendant's exculpatory trial testimony.  *Gravely v. Mills*, 87 F.3d 779, 786 (6th Cir. 1996).  This rule "rest[s] on the presumption that it [is] fundamentally unfair to assure a suspect that his silence would not be used against him and then to use his silence to impeach an explanation subsequently offered at trial."  *Id.* (citing *Wainwright v. Greenfield*, 474 U.S. 284, 291(1986)).

Primeau argues the prosecutor violated his rights under *Doyle* when he elicited the following testimony from Officer Rutt:

> State:   And will you again now describe for the ladies and gentlemen of the jury, when you first encountered [Primeau] what if any observations did you make about his person?
>
> Rutt:   He was very calm, didn't say a word to me.  Asked him to stand up, placed him in handcuffs, and he absolutely showed no emotion, which is pretty much blank.
>
> State:   In your, you say 14 or 17 years?
>
> Rutt:   17
>
> State:   17 years as a police officer can you give us any kind of a ballpark of how many times you have had occasion to place persons under arrest?
>
> Defense counsel:        Objection, your Honor.
> Court:  Overruled.
>
> Rutt:   How many times?
>
> State:   Sure.
>
> Rutt:   That I have arrested people?  A lot.  I couldn't give you an exact number.  Many arrests.

State:  If I say hundreds, would that be –

Rutt:   Yeah probably, sure.

State:  In your experience, when you do place someone under arrest is it more usual or unusual for them to remain completely quiet?

Defense counsel:        Objection

Defense counsel:        Objection.

Court:  Overrruled.

Rutt:   No, they don't remain quiet.

State:  But it is your testimony that the defendant did?

Rutt:   Yes.  I would have to say almost everybody I arrest —

Defense counsel:        Note that no question was posed, your Honor.

Court:  Sustained at this point.

***

State:  All right. Now, you previously indicated to us what your observations were with respect to emotions or lack thereof at the time of his arrest. How about now as you are processing or booking him?

Rutt:   During booking there is still absolutely no emotion, no questions were asked about the victim, his wife.

Defense counsel:        Objection, your honor.

Court:  Overruled.

State:  And it is your testimony he made no questions or comments or inquiry about his wife at that point either?

Defense counsel:        Objection.

Court:  Asked and answered.  Sustained.

53

(Doc. No. 8-2 at Tr. 161-162; 165-166.)

The Court finds the state appellate court reasonably determined it was not an error to allow Officer Rutt to comment on Primeau's demeanor during his arrest.  It is well established *Doyle* prohibits a specific type of conduct: the use of post-arrest, post-*Miranda* silence to impeach a defendant's testimony at trial.   *See, e.g. Wainwright v. Greenfield,* 474 U.S. 284, 291 (1986).  Here, Primeau did not testify at his trial.  Thus, there could not have been an attempt to impeach his nonexistent testimony.  Moreover, Officer Rutt testified when he placed Primeau under arrest he did not advise him of his *Miranda* rights, because he was not questioning him in regards to the case.  (Doc. No. 8-2 at Tr. 163.)  It is not clear from the trial transcript when Primeau was advised of his *Miranda* rights, but it is clear Officer Rutt had not advised Primeau of his *Miranda* rights at the time he made the observations in question.  Because *Doyle* applies only in the context of post-*Miranda* silence, it is entirely inapplicable to Primeau's claim.  *U.S. v. Peyton*, 183 Fed. App'x 539, 548 (6th Cir. 2006).  *See also Fletcher v. Weir*, 455 U.S. 603, 607, 102 S.Ct. 1309, 71 L.Ed.2d 490 (1982) (finding no due process violation where a prosecutor refers to a defendant's post-arrest, pre-*Miranda* silence); *Ambartsoumov v. Warden, Chillicothe Corr. Inst.*, 2014 WL 3045304, at *23 (S.D. Ohio July 3, 2014).

Assuming, *arguendo*, Primeau was able to establish a *Doyle* violation, such a violation would be harmless error.  The Supreme Court has determined  even if a *Doyle* violation is established, a federal habeas court may not grant habeas relief unless it is also shown that the violation had "a substantial and injurious effect or influence in determining the jury's verdict." *Brecht v. Abramson*, 507 U.S. 619, 113 S.Ct. 1710, 1721, 123 L.Ed.2d 353 (1993).  The Court finds this isolated testimony of Officer Rutt, which was not referenced by the prosecutor in

closing argument, did not have a substantial and injurious influence in determining the jury's verdict.  (*See* Doc. No. 8-6 at Tr. 146–156, 188-210.)

Finally, Primeau has identified no other Supreme Court precedent or clearly established federal law which establishes the prosecutor's questioning of Officer Rutt[18] violated his constitutional rights.  *See Hall v. Vasbinder*, 563 F.3d 222, 232 (6th Cir. 2009)("The constitutionality of using a defendant's pre-*Miranda* silence as substantive evidence of guilt [has] not been addressed by the Supreme Court.").  In light of the above, the Court cannot find the state appellate court's ruling on this issue is contrary to clearly established federal law.

Accordingly, the Court recommends Ground Seven of Primeau's Petition be DENIED.

## V. Conclusion

For all the reasons set forth above, it is recommended that the Petition be DENIED.


Date:  November 20, 2018                      ___s/ Jonathan Greenberg_____
                                             Jonathan D. Greenberg
                                             United States Magistrate Judge

---

[18]     Similar to the Prosecutor's decision to delay in obtaining a statement from Ms. Redding, the Court is troubled by the Prosecutor's decision to elicit this line of questioning.  It is unclear what the purpose of this testimony was, beyond suggesting Primeau's reaction to his wife's injuries and his subsequent arrest was odd or beyond the norm.  Again, however, as this Court is limited to finding violations of clearly established federal law, habeas relief cannot be granted under these circumstances.

**OBJECTIONS**

   Any objections to this Report and Recommendation must be filed with the Clerk of Court within fourteen (14) days after the party objecting has been served with a copy of this Report and Recommendation.  28 U.S.C. § 636(b)(1). Failure to file objections within the specified time may waive the right to appeal the District Court's order.  *See United States v. Walters*, 638 F.2d 947 (6th Cir. 1981); *Thomas v. Arn*, 474 U.S. 140 (1985), *reh'g denied*, 474 U.S. 1111 (1986).